2009 VT 66

# Roy Girouard v. Robert Hofmann, Commissioner, Department of Corrections

[981 A.2d 419]

No. 08-103

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed June 19, 2009

*Matthew F. Valerio*, Defender General, *Dawn Matthews*, Prisoners' Rights Office, and *Scott King*, Legal Intern, Montpelier, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Kurt A. Kuehl*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Roy Girouard appeals from an Addison Superior Court judgment dismissing his claims against defendant Robert Hoffman, Commissioner of the Vermont Department of Corrections (DOC), for failure to state a claim upon which relief can be granted under Vermont Rule of Civil Procedure 12(b)(6). Plaintiff contends that the court erred in determining that DOC did not violate the Ex Post Facto Clause of the United States Constitution when it applied the current version of 28 V.S.A. § 808(a)(6) to him, rather than the version of the statute that was in effect at the time plaintiff committed his crime. U.S. Const. art. I, § 10 ("No state shall . . . pass any . . . ex post facto Law . . . ."). We reverse and remand to the superior court for additional proceedings.

¶ 2. Since plaintiff's appeal concerns a Rule 12(b)(6) motion, we accept as true the well-pleaded allegations in the complaint and all of the reasonable inferences that may be derived therefrom. *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999).[1] On December 18, 1975, plaintiff was convicted of first degree murder and was sentenced to life in prison with the

---

[1] This case is an example of an attempt to try a case based solely on a motion to dismiss. Consistent with our notice pleading requirements, the complaint is sparse, essentially pleading that plaintiff has been denied furlough during his prison term based on a new statutory policy and that the imposition of the new policy is an abuse of discretion and an Ex Post Facto Clause violation. Defendant immediately filed a motion to dismiss arguing that plaintiff had failed to exhaust his administrative remedies and that the denial of furlough was statutorily required. Through the filing of memoranda of law, plaintiff's claim started to take shape — that plaintiff's injury was the loss of parole eligibility and his argument was that the imposition of the statutory policy was an Ex Post Facto Clause violation. The focus on parole eligibility became even sharper in this Court. Predictably, the motion to dismiss was an unhelpful way to narrow and define the issues. See, e.g., *Bock v. Gold*, 2008 VT 81, 184 Vt. 575, 959 A.2d 990 (mem.).

possibility of parole. Plaintiff's sentence does not include a minimum prison term. He has now been incarcerated for over thirty years, and in that time he has appeared before the parole board on more than one occasion, but his requests for parole have been denied.

¶ 3. In 2007, plaintiff successfully completed the Cognitive Self Change Program while in prison. After completing this program, he began speaking to his caseworker about reentering the community on furlough. Before 2001, plaintiff's eligibility for furlough was not conditioned on completion of a minimum prison term. 28 V.S.A. § 808(a) (prior to amendment by 2001, No. 61, § 88). In 2001, the Legislature amended § 808 to require that an inmate complete his minimum term before he is eligible for reintegration furlough.[2] 28 V.S.A. § 808(a)(6). As plaintiff was not sentenced to a minimum term, he cannot meet the eligibility requirements for reintegration furlough under the current statute.

¶ 4. Plaintiff argues that this change to § 808 in itself increased his punishment in violation of the Ex Post Facto Clause. Plaintiff also argues that the Ex Post Facto Clause is violated because this amendment made him ineligible for release on furlough, which significantly decreased his likelihood of being paroled. Plaintiff asserts that a favorable recommendation from DOC is required for his parole application to have any chance of success, and that he is unable to receive this recommendation without first successfully completing a minimum number of furlough days, citing 28 V.S.A. § 725(2) ("The department shall submit to the parole board a recommendation relative to whether the offender should be released to parole" when an offender has "successfully completed 180 days of supervision in a conditional reentry program.").

¶ 5. The superior court concluded that the 2001 amendment to § 808 did not increase the penalty for plaintiff's crime, and thus, there was no violation of the Ex Post Facto Clause. This appeal followed.

¶ 6. We review a trial court's disposition of a motion to dismiss de novo. *Bock*, 2008 VT 81, ¶ 4. A motion to dismiss for failure to state a claim should not be granted "unless it is beyond doubt

---

[2] At issue here is only § 808(a)(6), which allows furloughs for the process of reintegration. Section 808 currently also authorizes furlough without requiring completion of a minimum term in limited circumstances, such as to permit the inmate to attend a funeral or obtain medical services.

that there exist no facts or circumstances that would entitle the plaintiff to relief." *Richards,* 169 Vt. at 48, 726 A.2d at 85 (quotation omitted); see also *Alger v. Dep't of Labor & Indus.,* 2006 VT 115, ¶ 12, 181 Vt. 309, 917 A.2d 508 ("A motion to dismiss . . . is not favored and rarely granted. This is especially true when the asserted theory of liability is novel or extreme, as such cases should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." (quotations omitted)).

■ ¶ 7. To fall within the Ex Post Facto Clause prohibition, "a law must be retrospective — that is, it must apply to events occurring before its enactment — and it must disadvantage the offender affected by it." *Lynce v. Mathis,* 519 U.S. 433, 441 (1997) (quotation omitted). The prohibition "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 504 (1995) (quotation omitted). The legislative change at issue here effected no change in the definition of plaintiff's crime. Thus, for the 2001 amendment to § 808(a)(6) to violate the Ex Post Facto Clause, the amendment must have increased plaintiff's punishment for his crime.

■ ¶ 8. The controlling inquiry in this context is whether the legislative change "created a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner v. Jones,* 529 U.S. 244, 250 (2000) (quotation omitted). Whether there is an increase in punishment is based upon an objective evaluation of the effect of the amended legislation on the prisoner's sentence. *Lynce,* 519 U.S. at 442; see also *Weaver v. Graham,* 450 U.S. 24, 31 (1981) ("[I]t is the effect, not the form, of the law that determines whether it is *ex post facto.*"). The United States Supreme Court has declined to articulate a definitive formula for determining if a change in the law affects punishment sufficiently enough to constitute an Ex Post Facto Clause violation. *Morales,* 514 U.S. at 509. However, the Court has stated that a change that merely creates a "speculative and attenuated possibility" of increasing the punishment is insufficient to trigger an Ex Post Facto Clause violation. *Id.*

■ ¶ 9. We agree that a change in the law that merely alters or eliminates an inmate's eligibility for furlough does not rise to an Ex Post Facto Clause violation. Such a change relates to

prison administration and regulation, and not an element of punishment, and is, therefore, beyond the purview of the Ex Post Facto Clause. See, e.g., *Brown v. Day*, No. 96-35027, 1997 WL 334970, at \*2 (9th Cir. June 11, 1997) (holding change in eligibility for furlough does not violate Ex Post Facto Clause, noting that there was no allegation that "eligibility for the furlough program would have any impact on the length of his sentence"); *Lee v. Governor of N.Y.*, 87 F.3d 55, 59 (2d Cir. 1996) (holding that legislation rendering certain prisoners ineligible for temporary release was "not . . . an increase in punishment," especially where "there is no allegation that plaintiffs' eligibility for or participation in a temporary release program would have any effect on the length of their sentences"); *Milhouse v. Levi*, 548 F.2d 357, 364 (D.C. Cir. 1976) (holding that the attorney general's order that curtailed furlough privileges was not an ex post facto law because "[a] furlough program, unlike parole, . . . is an internal rehabilitational program the denial of which cannot be said to be an element of the punishment attached to an inmate's initial conviction"); *Spuck v. Desuta*, No. Civ.A. 05-85J, 2006 WL 1428249, at \*2 (W.D. Pa. May 22, 2006) (holding that the "Ex Post Facto Clause cannot be violated by the denial of a furlough"); *DiStefano v. Watson*, 566 A.2d 1, 6 (Del. 1989) (upholding amendment rendering prisoners generally ineligible for any furlough or work release program during the first ten years of their confinement, noting that it "regulates the Department of Correction's internal affairs, and is not a law annexed to the crime"). But see *Plyler v. Moore*, 129 F.3d 728, 735 (4th Cir. 1997) (holding that Ex Post Facto Clause was violated where the furlough eliminated was "indistinguishable from parole").

¶ 10. Plaintiff does not, however, base his claim to this Court primarily on his reduced opportunity for furlough. Instead, he alleges that the 2001 amendment altered his ability to obtain parole and effectively increased his sentence — from life in prison with the possibility of parole to life in prison without the possibility of parole — because successfully completing furlough is a prerequisite to parole. Legislative amendments that eliminate opportunities for parole that previously existed can result in Ex Post Facto Clause violations. See, e.g., *Garner*, 529 U.S. at 250 (recognizing that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of" the Ex Post Facto Clause); *Puckett v. Abels*, 684 So. 2d 671, 678 (Miss. 1996)

(holding that statutory amendment requiring 85% of a sentence be served before a prisoner is eligible for parole is Ex Post Facto Clause violation); *Miller v. Ignacio*, 921 P.2d 882, 884 (Nev. 1996) (holding that legislation revoking power of pardon board to commute a sentence of life without parole to life with possibility of parole violated Ex Post Facto Clause, stating that "[a]bsolutely foreclosing a real, albeit rare, avenue of release to all prisoners. serving sentences of 'life without' for the crime of first-degree murder creates more than a speculative or attenuated risk of increasing the penalty for this covered crime.").

■ ¶ 11. If in fact the 2001 amendment to the furlough statute created a sufficient risk of eliminating plaintiff's eligibility for parole, then plaintiff's claim of an Ex Post Facto Clause violation may prevail. Plaintiff alleges that the situation here is essentially identical to that in *Knox v. Lanham*, 895 F. Supp. 750 (D. Md. 1995), *aff'd, Worsham v. Lanham*, 76 F.3d 377 (4th Cir. 1996). In *Knox*, the Maryland Division of Correction issued a new directive giving inmates serving life sentences a higher security designation, which prevented these inmates from participating in work release. Plaintiff alleged that an unwritten policy of the parole board denied parole to any inmate who had not participated in work release. Based on the track record of the board, the court found a violation of the Ex Post Facto Clause:

> In contrast, an honest reading of the summary judgment record in this case leads to the conclusion that the effect of the interaction between the mandatory medium security classification and the Parole Commission's unwritten requirement of work release and family leave before recommending parole, far from creating a "speculative and attenuated risk of increasing the measure of punishment attached to" plaintiffs' crimes, directly impacts upon their actual eligibility for parole.
>
> It may well be, as respondents argue, that "lifers" are only rarely granted parole. However, prior to the adoption of the measures here in question, that rare opportunity did exist for lifers who displayed an exceptional attitude and who compiled an excellent record while incarcerated. That opportunity has now been taken from them. The record establishes beyond dispute that (1) under current Parole Commission policy prisoners will

not be recommended for parole unless they are on work release, (2) prisoners cannot participate in work release unless they are classified to pre-release security and (3) under DCD 100-1 lifers cannot be granted pre-release security. The effect of these changes is to foreclose lifers from ever being able to obtain parole. Hope and the longing for reward for one's efforts lie at the heart of the human condition. Their destruction is punishment in the most profound sense of the word. Accordingly, I find that the combined effect of the new DCD 100-1 and the Parole Commissioner's proven policy constitutes a violation of the Ex Post Facto Clause.

*Id.* at 758; see also *Elmore v. State,* 409 S.E.2d 397, 399-400 (S.C. 1991) (stating that the retrospective reduction in work credits that affect the date on which a prisoner would be entitled to consideration for parole is an Ex Post Facto Clause violation), *overruled on other grounds by Al-Shabazz v. State,* 527 S.E.2d 742 (S.C. 2000). If plaintiff can prove the link between furlough and parole in the same way that the plaintiff in *Knox* proved the relationship between work release and parole, he will have established an Ex Post Facto Clause violation.

¶ 12. The most recent decision of the United States Supreme Court addressing the effect of the Ex Post Facto Clause in parole eligibility situations, *Garner v. Jones,* is particularly instructive on the question before us. In *Garner,* an inmate alleged a violation of the clause because the interval for parole consideration in his circumstances was increased from three years to up to eight years. The Court reversed a Court of Appeals decision finding an Ex Post Facto Clause violation as a matter of law, but remanded for factual development of the effect of the policy change on the inmate involved:

In the case before us, respondent must show that as applied to his own sentence the law created a significant risk of increasing his punishment. This remains the issue in the case, though the general operation of the Georgia parole system may produce relevant evidence and inform further analysis on the point.

The record before the Court of Appeals contained little information bearing on the level of risk created by the change in law. Without knowledge of whether retroactive

> application of the amendment . . . increases, to a significant degree, the likelihood or probability of prolonging respondent's incarceration, his claim rests on speculation.

*Garner*, 529 U.S. at 255-56. Just as in *Garner*, whether the amendment here produced a significant risk of increasing plaintiff's sentence cannot be determined without the factual development precluded by the motion to dismiss.

*Reversed and remanded.*