2014 VT 75

# In re Roy Girouard

[102 A.3d 1079]

No. 12-372

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Crawford, Supr. J., Specially Assigned

Opinion Filed July 18, 2014

*Michael Rose*, St. Albans, for Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *Sarah Katz*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Robinson, J.** Petitioner Roy Girouard is in the custody of the Vermont Commissioner of Corrections serving a life sentence with a possibility of parole. Petitioner appeals the superior court's denial of a motion to reopen his Vermont Rule of Civil Procedure 75 post-conviction relief petition and to order the Department of Corrections (DOC) to release him on furlough. We reverse and remand.

¶ 2. Petitioner was convicted of first-degree murder in 1975 and sentenced without a minimum prison term. Prior to 2001, an inmate's eligibility for furlough was not conditioned on the completion of a minimum prison term. 28 V.S.A. § 808 (2000); see also *Girouard v. Hofmann* (*Girouard I*), 2009 VT 66, ¶ 3, 186 Vt. 153, 981 A.2d 419. The Legislature amended 28 V.S.A. § 808 in 2001 to condition eligibility for conditional reentry furlough on the completion of the inmate's minimum term. See 28 V.S.A. § 808(a)(6) (2013).

¶ 3. In 2007, petitioner filed a Rule 75 action against the DOC alleging that DOC's refusal to consider him eligible for furlough because he lacked a minimum sentence violated the Ex Post Facto Clause of the United States Constitution. The superior court dismissed petitioner's claim, concluding that 28 V.S.A. § 808, as amended, did not violate the Ex Post Facto Clause because it did not increase the penalty for petitioner's crime. *Girouard I*, 2009 VT 66, ¶ 1. On appeal, this Court instructed that if the 2001 amendment "created a sufficient risk of eliminating [petitioner's] eligibility for parole" then he "may prevail" on his Ex Post Facto Clause violation claim. *Id.* ¶ 11. We remanded to the superior court for further factual development to determine whether the amended statute, as applied to petitioner, "produced a significant risk of increasing [his] sentence." *Id.* ¶ 12.

¶ 4. On remand, the superior court held a bench trial in which it heard testimony from the Vermont Parole Board Director regarding the effect of furlough on parole decisions. The court

found that, while furlough is but one factor DOC considers in its parole decisions, it was historically rare for a violent offender to be paroled without first being furloughed. In its December 18, 2009 order, the court concluded that petitioner's inability to obtain furlough release because he lacks a minimum ,sentence impacts the likelihood of his parole and therefore "creates a significant risk of lengthening his period of incarceration." The court granted petitioner Rule 75 relief and ordered DOC to "evaluate [petitioner] for furlough under the pre-2001 version of the statute."

¶ 5. Following the 2009 court order, DOC's Central Case Staffing Review Committee (CCSRC) considered petitioner for furlough release and determined that petitioner could be reevaluated for release upon completing eight more program participation credits of Cognitive Self Change (CSC).

¶ 6. Petitioner asserts that he had completed his original CSC programming requirements in 2007 and thus refused to participate in the additional CSC programming required by the committee. As a result, the committee continued to refuse petitioner furlough. In October 2011, the Vermont Parole Board denied petitioner parole based on his failure to comply with the committee's programming requirements.

¶ 7. In February 2012, petitioner filed a motion to reopen his original Rule 75 motion for post-conviction relief, alleging that the committee's reasons for denying him furlough were pretextual. In the ensuing pleadings, petitioner argued that, prior to the superior court's December 2009 order, DOC had made a determination that he had completed all the requirements of his case plan, had approved his reentry plans, including checking and accepting his proposed residence and verifying his transportation and employment resources, and had never intimated that any factors other than the 2001 amendment were obstacles to his eligibility for furlough. He argued that DOC required the additional programming as a prerequisite to furlough release "to penalize [him] for his successful litigation of the issue of his furlough eligibility." Petitioner requested that the court reinstate his original Rule 75 petition, appoint counsel, and issue an order directing DOC to furlough petitioner immediately.

¶ 8. The superior court denied petitioner's motion to reopen, stating that DOC's decision to require additional CSC programming prior to furlough was a programming decision wholly unreviewable under Rule 75. Petitioner appealed.

¶ 9. Petitioner argues on appeal that the superior court's 2009 order directing DOC to evaluate petitioner for furlough is the law of the case and the superior court has "inherent authority" to enforce it. Petitioner alleges that DOC's actions constitute a "bad faith evasion" of the court's order and argues that the superior court erred by failing to develop a factual record to determine whether DOC followed the court's mandate. The State counters that DOC complied with the 2009 superior court order, and that its programming decisions are unreviewable under Rule 75.[1]

¶ 10. At the outset, we note that the trial court denied petitioner's motion based on its legal conclusion that programming decisions are unreviewable under Rule 75. Although the State submitted an affidavit in support of its position, petitioner was denied any discovery and did not respond with a presentation of evidence of his own, and the trial court's decision was not based on the evidentiary record as opposed to its legal conclusion. Accordingly, we treat the denial as a dismissal for failure to state a claim upon which relief can be granted.

¶ 11. ▉ The threshold question is whether, and pursuant to what standard, the DOC's decision not to grant petitioner immediate furlough, and to instead require that he complete additional programming, is reviewable. The application of programming requirements "falls within the broad discretion of the DOC to determine what mode of treatment best serves individual inmates" and thus is not ordinarily reviewable under Rule 75. *Rheaume v. Pallito*, 2011 VT 72, ¶ 11, 190 Vt. 245, 30 A.3d 1263. Petitioner does not challenge DOC's authority or expertise in determining his programming needs, and concedes that a DOC decision to deny furlough because he had not met the requirements of his case plan would ordinarily be shielded from review. However, he argues that the additional CSC programming requirements were a pretext designed to enable DOC to deny petitioner furlough. In particular, he argues that the denial is intended as retaliation for petitioner's successful litigation of the issue of his furlough eligibility.

---

[1] The State also argues that petitioner's motion is essentially a motion for relief from judgment pursuant to V.R.C.P. 60(b), and was untimely filed. Petitioner seeks the opposite of relief from judgment; he has asked for *enforcement* of a judgment. We accordingly reject the State's argument that petitioner's motion was untimely.

¶ 12. ■ ■ Although discretionary programming decisions are not reviewable by courts, constitutional claims are.[2] The fact that a colorable constitutional claim implicates a programming decision committed to the DOC's discretion does not insulate the alleged constitutional violation from judicial review. This Court implicitly recognized as much when it reviewed petitioner's Ex Post Facto claim in response to DOC's initial refusal to consider petitioner eligible for furlough. *Girouard I*, 2009 VT 66, ¶¶ 6-12. To the extent that petitioner is not merely challenging the propriety of the programming decision here, but is raising a colorable constitutional claim, his claim is reviewable. See *Webster v. Doe*, 486 U.S. 592, 603-04 (1988) (concluding that although judicial review is not available for discharge decisions within discretion afforded to CIA Director by the National Security Act, that Act does not preclude judicial review of colorable constitutional claims based on individual discharges); *Handverger v. City of Winooski*, 2011 VT 130, ¶ 8, 191 Vt. 556, 38 A.3d 1153 (mem.) (stating that in context of administrative decision, the Legislature has the power, in the absence of a constitutional requirement, to deny appellate review); *Vt. State Emps.' Ass'n v. Vt. Criminal Justice Training Council*, 167 Vt. 191, 201, 704 A.2d 769, 775 (1997) (refusing to impose limits on Attorney General's legislatively derived power absent any constitutional imperative). DOC's expertise in promulgating programming requirements and our concomitant deference to DOC's discretion does not shield DOC from review of colorable constitutional claims. Thus, if petitioner's allegations concerning the DOC's actions frame a colorable constitutional claim, dismissal on the pleadings would be premature.

¶ 13. ■ In determining whether a complaint survives dismissal for failure to state a claim, "courts must take the factual

---

[2] A court also has inherent authority to ensure compliance with its own decree. See *Aither v. Estate of Aither*, 2006 VT 111, ¶ 11, 180 Vt. 472, 913 A.2d 376 ("[I]t is axiomatic that a court must have the power to enforce its own orders. (quotation omitted)); *Andrew v. Andrew*, 62 Vt. 495, 498, 20 A. 817, 818 (1889) ("In the absence of any other provision, the authority to make the order carries with it the power to enforce it."). We agree with petitioner that the court is empowered to review the DOC's furlough determination to ensure compliance with the superior court's 2009 mandate requiring DOC to remove the impediment that the amended statute's minimum term requirement posed in petitioner's furlough review. We do not infer from the pleadings that petitioner alleges that the 2001 statute remains as an impediment. Rather, petitioner seems to be suggesting a new unconstitutional impediment to his goal of furlough release — retaliation by DOC.

allegations in the complaint as true, and consider whether it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 5, 184 Vt. 1, 955 A.2d 1082 (quotations omitted). In this case, petitioner alleges that the DOC used its programming requirements to retaliate against him for pursuing his case in *Girouard I* by preventing him from attaining the furlough release at issue in that case. Such retaliation, if established, would clearly be unconstitutional. See *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (concluding that retaliation against inmate for pursuing a grievance violates right to petition government for redress of grievances guaranteed by the First and Fourteenth Amendments); see also *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (stating inmates have constitutional right secured by the First Amendment to pursue civil rights litigation in the courts and file prison grievances). To make a claim of unconstitutional retaliation, petitioner must demonstrate that he engaged in constitutionally protected conduct and that the protected conduct was a "substantial or motivating factor" in DOC's decision to require additional programming and deny him furlough. *Graham*, 89 F.3d at 79.[3]

¶ 14. ■ Petitioner's allegations state a claim sufficient to survive dismissal. In his reply to the State's response to the motion to reopen, petitioner states that before he brought his original Rule 75 petition claiming a violation of the Ex Post Facto Clause, he had complied with all the requirements of his case plan, including completing all his original CSC programming requirements. In anticipation of his furlough, petitioner had secured employment and a residence, which was visited and approved by the local probation and parole office. Additionally, DOC had arranged for petitioner to meet with representatives of federal agencies to ensure his receipt of federal benefits upon release. Petitioner's caseworker had also deposited $100 into petitioner's inmate account as "gate money," a practice petitioner states only occurs when an inmate is days away from release. In short, the only impediment to his release on furlough in 2007 was the 2001 amendment to the law.

---

[3] If petitioner makes this showing, the burden then shifts to DOC to show that it would have required the additional programming in the absence of the protected conduct. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

¶ 15. Further, petitioner claims that he has never received a major disciplinary infraction. Nor had DOC ever indicated, until the evaluation in response to the 2009 superior court order, that petitioner might need additional CSC programming prior to his release. Petitioner asserts that the only change since DOC's preparations for his release on furlough prior to 2007 was that he successfully litigated his Ex Post Facto claim against DOC.

¶ 16. ■ We understand the concern that retaliation claims by prisoners are prone to abuse. See *Graham*, 89 F.3d at 79 ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (quotation omitted)). We support the notion that "wholly conclusory" complaints alleging retaliation can be dismissed at the pleading stage. *Id.* But that is not the case here. Accepting petitioner's specific factual allegations as true — that DOC had taken tangible and affirmative steps to prepare for petitioner's furlough up until he filed his case in *Girouard I* and the only change between the preparations for his imminent release and the subsequent denial of his furlough was his successful litigation of that claim — we cannot conclude "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Colby*, 2008 VT 20, ¶ 5 (quotation omitted). The allegations in this case, if proven, would be enough to support a circumstantial inference that would not be common in many other, less factually specific, claims of retaliation. See *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998) (explaining that where direct evidence is unavailable to prove pretext, a plaintiff may present circumstantial evidence showing that the "proffered motives were not the actual motives because they are inconsistent or otherwise not believable"). Petitioner has not made mere generalized allegations of retaliation; he has alleged specific facts to make a prima facie case of unconstitutional retaliation. DOC may have entirely credible evidence countering petitioner's allegations, but dismissal on the pleadings in the face of petitioner's allegations of a colorable (and reviewable) constitutional claim is premature.

*Reversed and remanded.*