*Wool v. Pallito*, No. 759-12-13 Wncv (Teachout, J., August 14, 2015)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

# STATE OF VERMONT

**SUPERIOR COURT**                                          **CIVIL DIVISION**
**Washington Unit**                                          **Docket No. 759-12-13 Wncv**

**KIRK WOOL**
  **Plaintiff**

  **v.**

**ANDREW PALLITO, Commissioner,**
**Vermont Department of Corrections**
  **Defendant**

## DECISION
### Pending Motions

In this case, Mr. Kirk Wool, an inmate in the custody of the Vermont Department of Corrections (DOC), alleges that the DOC has classified him as a Level C offender.  He claims that no such Level C designation, and its punitive implications, existed at the time of his conviction.  His sole claim in this case is that the DOC at some point after his conviction replaced the then-existing classification regime that did not include Level C with one that did, then classified him as Level C, and that having done so eliminates or severely prolongs any opportunity he might have for early release in violation of the Ex Post Facto Clause of the United States Constitution, U.S. Const. art. I, § 10.

Previously in this case, Mr. Wool's equal protection claim was dismissed.  It also was determined that Mr. Wool is *not* seeking Rule 75 review of the decision to classify him as Level C, whether due to the use of "false facts," intentional manipulation of recidivism screening tools, or any other reason.  In short, the sole claim in this case is that the classification scheme that includes Level C is, as applied to him, ex post facto.  Mr. Wool, in this case, is not seeking to establish that he should not have been classified as Level C.

Pending before the court are the State's motion to dismiss and numerous motions and requests concerning discovery.

*The State's motion to dismiss*

The State seeks dismissal for lack of subject matter jurisdiction of Mr. Wool's claims challenging the correctness of his Level C classification.  The State filed an earlier motion arguing exactly the same.  The earlier motion led to the clarification that Mr. Wool is *not* trying to raise independent claims about the correctness of his Level C classification.  The State's confusion is understandable, however, because Mr. Wool continues to argue about and seek discovery apparently related to the wisdom of the classification decision as zealously after the clarification as before.  According to the State, the fact of Mr. Wool's Level C classification is

material to his Ex Post Facto claim but the wisdom of the classification is irrelevant: if use of a new classification system is determined to amount to a violation of the Ex Post Facto clause, then the judgment will make the new classification system inapplicable.  If the ex post facto claim is not shown, the case is over.  The case does not include review of the correctness of the Level C or any other classification.

Mr. Wool has never, in the record, articulated his ex post facto claim in the context of a meaningful factual record (whether evidence or allegations) offered to support it.[1]  While the claim is clear at a general level, as described above, the specifics are not.  Mr. Wool seems to think that he has been misclassified as Level C and that proving the misclassification somehow will help to prove his ex post facto claim.  The State argues that any "misclassification" is legally irrelevant to this case.

The State's argument is correct.  See *Miller v. Ignacio*, 921 P.2d 882, 885 (Nev. 1996) (per curiam) (explaining that the ex post facto inquiry is objective in nature); *Giroud v. Hofmann*, 2009 VT 66, ¶ 8, 186 Vt. 153 ("Whether there is an increase in punishment is based upon an objective evaluation of the effect of the amended legislation on the prisoner's sentence.").  However, its motion seeks dismissal for lack of subject matter jurisdiction though there is agreement that Mr. Wool's only claim is for an ex post facto violation, and there can be no serious dispute that this court has jurisdiction to hear an ex post facto claim.  A dismissal motion is not an effective way to confront the manner by which the State anticipates that Mr. Wool will attempt to support his claim.  A claim is no less within the court's subject matter jurisdiction because it lacks merit.

The State's motion to dismiss must be denied.


*Discovery*

There are numerous motions, requests, and other filings pending regarding discovery. The court reiterates now what Judge Toor noted earlier: a flood of filings addressing the same general matter is chaotic, unproductive, and results in little other than *more* unnecessary delay. See Entry Order dated July 24, 2014 ("Court explains it cannot work with 14 filings on one motion, and needs the issues to be clarified in a new motion.").  This has been a persistent problem in this case.

On May 8, 2015, the court ruled clearly on remaining discovery disputes as follows:

The Court will schedule a hearing to determine enforcement of discovery obligations after Mr. Wool has filed the following with the court: a specific numbered list clarifying in detail the discovery material or event for which he seeks discovery enforcement.  Atty McLean shall respond to the numbered paragraphs prior to the hearing.  The Clerk shall not issue subpoenas until after

---

[1] Indeed, there is no explanation in the record of what the Level C classification fully means and how it changed what preceded it.

2

this hearing has occurred.

Mr. Wool responded to this order in a May 20 filing. The State filed its opposition on May 29. This order and these filings frame the discovery disputes at this point.[2]

Mr. Wool requests the following: (1) copies of the "actuarial tests," including the LSI-R, VRAG, SORAG, and PCL-R, that are used in the process of deciding to classify an inmate at Level C; (2) to depose Claire Gilligan, the consultant (independent contractor) who conducted a risk assessment of Mr. Wool; and (3) to depose the Executive Director of the Vermont Parole Board. The State opposes these requests and additionally opposes Mr. Wool's pending request to depose Commissioner Pallito.

*Actuarial tests and Claire Gilligan*

The State opposes Mr. Wool's requests for copies of the actuarial tests used in the process of determining his Level C classification and to depose Claire Gilligan, one of the persons who evaluated him. The State argues that it does not possess the tests—Claire Gilligan does, and she is an independent contractor who was hired to evaluate Mr. Wool (and who Mr. Wool is suing in a separate case). The State also argues that the content of the tests and the testimony of Ms. Gilligan are irrelevant to this case. Mr. Wool offers that this discovery is necessary to help him show how the DOC exercises its discretion and because his own expert will opine that his evaluation of Mr. Wool produced different results.

The court fails to see the relevance of this line of discovery, which appears to be calculated to lead to evidence that Mr. Wool should have been classified at Level B rather than Level C. Mr. Wool has not articulated in any manner how his belief about how he should have been classified has any bearing on his ex post facto claim. Even if he were to be able to prove that a different decision-maker might have arrived at a different or wiser classification decision, that fact has no apparent relevance. There is no perceptible way that in ultimately evaluating whether there is an ex post facto violation that this court will be deciding whether the DOC abused its discretion by classifying Mr. Wool at Level C. Mr. Wool's requests for this discovery are denied.

*Executive Director of the Vermont Parole Board*

Mr. Wool asserts that he needs to depose the Executive Director of the Vermont Parole Board to gather evidence establishing a link between his Level C classification or its repercussions and his prospects for parole. The court presumes that, similar to the analogous matter in *Giroud v. Hofmann*, 2009 VT 66, ¶ 11, 186 Vt. 153, Mr. Wool seeks to demonstrate that the Parole Board has an unwritten policy that forecloses positive parole decisions for Level C offenders. This is a legitimate avenue of inquiry for the same reasons it was in *Giroud*.

---

[2] While the court indicated that these discovery issues would be resolved at a hearing, the parties have presented them clearly and succinctly. The court is able to rule without a hearing and does so to avoid further delay.

However, the State argues that the Executive Director is a high-ranking official who should be shielded from a deposition, and that Mr. Wool can seek the discovery he needs in other less obtrusive ways and from lower ranking officials.

Mr. Wool has articulated no need to depose the Executive Director personally. He seeks evidence of institutional knowledge in aid of a proof of an unwritten policy. He can pursue a Rule 30(b)(6) deposition in which the DOC, on its own or on the Board's behalf, designates one or more responsive deponents.

*Commissioner Pallito*

The State opposes Mr. Wool's request to depose Commissioner Pallito because he is a high-ranking official and because the testimony Mr. Wool seeks to elicit is irrelevant to this case.

Mr. Wool offers the following with regard to deposing Commissioner Pallito:

There is no-one else who can testify as to Mr. Pallito's thought process in deciding to approve the Level C designation, nor his personal reasoning for denying my appeal of that Level C designation. In addition, other staff are required, per DOC policy, to carry out yearly audits of the Level C designation. Mr. McLean has advised me that those yearly audits have never been done, and only Mr. Pallito has the power to allow staff to refuse to perform those audits thus only Mr. Pallito can reveal just why he allowed (and continues to allow) his subordinates to violate Level C Policy that requires those audits.

Mr. Wool's Response 2 (filed May 30, 2015).

Mr. Wool has not articulated any reason why Commissioner Pallito's private thoughts about the decision to classify Mr. Wool at Level C and the denial of an appeal from that classification decision are relevant to this case and none is apparent to the court. The same is so with regard to internal audits. This line of discovery is irrelevant and denied.

4

**ORDER**

For the foregoing reasons, the court rules as follows:

(1)     The State's motion to dismiss is denied;
(2)     Mr. Wool's request for production of the actuarial tests is denied;
(3)     Mr. Wool's request to depose Claire Gilligan is denied;
(4)     Mr. Wool's request to depose the Executive Director of the Parole Board is denied, but Mr. Wool may have the DOC designate one or more witnesses responsive to Mr. Wool's need for evidence related to the Parole Board pursuant to Rule 30(b)(6);
(5)     Mr. Wool's request to depose Commissioner Pallito is denied; and
(6)     all other pending motions or requests are denied.
**(7)     The court amends pretrial deadlines as follows:**
　　　　　**September 10, 2015  –  discovery requests**
　　　　　**October 12, 2015     –  completion of discovery**
　　　　　**November 10, 2015  –  motions deadline.**

Dated at Montpelier, Vermont this _____ day of August 2015.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Mary Miles Teachout,
　　　　　　　　　　　　　　　　　　Superior Judge