2011 VT 98

**STATE of Vermont v. Robert THOMPSON**

[30 A.3d 671]

No. 10-045

¶ 1. August 31, 2011. Defendant appeals the district court's dismissal, on jurisdictional grounds, of his motion to withdraw his plea, arguing that: (1) the court had subject matter jurisdiction to consider his motion and inherent authority to review his sentence; (2) the plea procedure was fundamentally flawed and therefore invalid; (3) there were fair and just reasons to withdraw his plea; and (4) the Vermont Department of Corrections misapplied the Interstate Compact on Probation. We find unavailing the State's after-the-fact jurisdictional challenge to defendant's motion to withdraw his plea, and therefore we reverse the district court's decision and remand the matter for the court to consider the merits of his motion.

¶ 2. Defendant resides and works in Massachusetts. Following a ski visit to Vermont, defendant's minor nephew alleged that defendant had inappropriately touched his buttocks. Based on this allegation, in December 2007, defendant was charged with lewd or lascivious conduct with a child, a felony, in violation of 13 V.S.A. § 2602. On April 22, 2009, on the morning of the trial jury draw, defendant entered into a plea agreement with the State wherein he pled no contest to an amended charge of engaging in a prohibited act, a misdemeanor, in violation of 13 V.S.A. § 2632(a)(8). The agreement recommended a suspended sentence and probation. At the April 22, 2009 change-of-plea hearing, the prosecutor noted that the parties had specifically agreed that defendant could reside in Massachusetts during his probation. The prosecutor explained that the agreement to allow defendant to live in Massachusetts was contingent upon it being approved by probation officials. The prosecutor saw "no reason to think that he would not [be approved], but [could not] guarantee that." The court accepted defendant's plea, finding it was made knowingly and voluntarily, and on June 22, 2009 sentenced defendant to one-to-twelve months, all suspended. Defendant was placed on probation with various conditions, including sex offender special conditions. The plea agreement stated that "defendant may reside in Massachusetts."

¶ 3. Ten days after sentencing, on July 2, 2009, defendant filed an emergency motion, asking the court either to allow him to withdraw his plea or to strike a special probation condition that was making it impossible for him to return to his home and job. He alleged that, contrary to his understanding and the terms of the plea agreement, he was forced to stay at a motel in Vermont because he could not return to his Massachusetts residence. Apparently, Massachusetts officials had refused to allow defendant to reside in his Massachusetts home based on their conclusion that his doing so would be contrary to the special sex offender condition that prohibited him from living in a neighborhood with large numbers of children. At a hearing on the motion that same day, the court suggested to the parties that it strike defendant's sentence, but keep the plea agreement in place, for thirty days to allow defendant to obtain alternative housing in Massachusetts. The court stated its intent to "put [defendant] back to where we were on June 21st," the day before he was sentenced. The court further stated that "if we have to argue at a later point for withdrawal of the plea, then I'm — you know, I'm going to want memoranda and so forth from — from counsel as to whether — the only thing this would fit under is so-called manifest

injustice." Pursuant to the understanding reached by the court and the parties at the hearing,[1] the court issued an order that same day striking defendant's sentence, keeping the plea agreement in place, and continuing the matter for thirty days for resentencing on the same agreement after defendant obtained alternative housing in Massachusetts. Unfortunately, once the court struck defendant's sentence, Massachusetts officials refused to approve any housing for defendant or otherwise remain involved in the case.

¶ 4. Entrapped by this Catch-22 situation, defendant remained in limbo. In early August 2009, he moved again to amend the plea agreement, and then on September 1, 2009, he asked the court either to order his supervision in Massachusetts by Vermont officials or to allow him to withdraw his plea. The thrust of defendant's motion to withdraw was that the entire plea was flawed because an essential part of the plea was his ability to live in his own home and yet he was unable to do so. In two separate memoranda of law filed in September and October of 2009, the State opposed defendant's motion to withdraw his plea, but not on the basis that the court lacked jurisdiction to consider the motion. An October 9, 2009 hearing focused exclusively on the merits of the motion, with defendant,

his attorney, and his probation and parole officers testifying as to their understanding of the terms and conditions of the agreement. At the close of the hearing, the court invited the parties to submit memoranda. In a November 2, 2009 memorandum of law submitted four months after the district court's July 2 order vacating defendant's sentence, the State argued for the first time that the court lacked jurisdiction to consider the merits of the motion that led to the July 2 order.

¶ 5. The court agreed with this argument and, on November 20, 2009, dismissed defendant's motion on jurisdictional grounds. According to the court, on July 2 when defendant first moved to withdraw his plea, he was in custody under sentence and therefore the court lacked jurisdiction to entertain the motion under Vermont Rule of Criminal Procedure 32(d). The court further explained that because it lacked jurisdiction over the initial motion, it had "no jurisdiction to consider the motion [to withdraw] further." Following a January 4, 2010 hearing, the court reinstated defendant's original sentence except for striking the condition restricting his residence based on the number of children in the neighborhood. Defendant appealed, and the court granted his request to stay his sentence pending this appeal.

¶ 6. For two interrelated reasons, we conclude that the court erred by nullifying its July 2 order striking defendant's sentence and by refusing, on jurisdictional grounds, to consider defendant's motion to withdraw his plea. Before we discuss the reasons, we emphasize the narrowness of the issue before us. The issue is not whether the court made the right decision in issuing the July 2 order or whether the order is an abuse of the court's discretion. The issue is only whether the State's jurisdictional challenge is sufficient for the State to belatedly attack an order in which it acqui-

---

[1] To the extent that there is any uncertainty as to whether the prosecutor supported the decision to strike defendant's sentence, it is the result of the transcriber being unable to identify any speaker other than the defense attorney. Nevertheless, no one objected to the court's suggested action, even when offered an opportunity to do so. Moreover, the transcript makes it clear that the action was arrived at through the discussion of all the participants at the hearing. Thus, the prosecutor, at minimum, acquiesced in the court's resolution of the matter.

esced. To prevail, the State must show that the July 2 order was beyond the subject matter jurisdiction of the court so as to permit a belated attack on the order. The State fails to make the required showing.

¶ 7. First, the district court's decision to strike its July 2 order was based on its mistaken belief that the only relief defendant sought in his July 2 motion was the withdrawal of his guilty plea — relief that the court could not provide because defendant was in custody under sentence.[2] In fact, defendant sought alternative relief in the nature of sentence reconsideration to eliminate the part of the sentence that made it impossible for him to return to his home. The court had jurisdiction to grant this relief, even though defendant was under sentence, because he made the motion within ninety days of the imposition of the sentence. See 13 V.S.A. § 7042(a); V.R.Cr.P. 35(b). Although it was not the exact relief defendant sought, the July 2 order must be viewed as a form of sentence reconsideration, which was within the court's discretion to grant. Indeed, even if defendant had not requested sentence reconsideration, the court could have granted such relief on its own motion. See 13 V.S.A. § 7042(a); V.R.Cr.P. 35(b). In effect, the

court did so here by granting relief different from what defendant requested.[3]

¶ 8. We recognize that the sentence in question was based on a plea agreement, see State v. Hance, 157 Vt. 222, 227, 596 A.2d 365, 368 (1991) (stating that although Rule 35 has "limited usefulness" when a plea bargain is involved, "[w]e do not suggest that a sentence adopted pursuant to a plea agreement should never be subject to modification" under § 7042(a) and Rule 35), and that the grounds for the request for reconsideration arose after the imposition of the sentence, see State v. Sodaro, 2005 VT 67, ¶ 9, 178 Vt. 602, 878 A.2d 301 (mem.) ("It is well established that sentence reconsideration pursuant to 13 V.S.A. § 7042 is not intended to address post-incarceration matters."). But see State v. Martinsen, 156 Vt. 643, 643, 590 A.2d 885, 886 (1991) (mem.) (stating that "a proper use of sentence reconsideration" under § 7042(a) is "to change a sentence im-

---

[2] The dissent is also fixated on the fact that defendant sought to withdraw his plea on July 2, even though he sought other relief and the trial court refused to allow defendant to withdraw his plea, giving relief only with respect to his sentence. Thus, the dissent asserts that the trial court renamed "the plea withdrawal request a motion to modify or to reconsider," even though defendant identified the relief sought and included sentence modification as part of that relief. Post, ¶ 15. The dissent's assertion is inconsistent with the record; the fact that defendant also sought plea withdrawal on July 2 is irrelevant to this decision.

---

[3] Although the State has not raised this issue, we note that the court, in effect, suspended the sentence temporarily rather than permanently modifying it. Although we have never addressed whether the power to modify includes the power to temporarily suspend, other courts have held that suspension is a form of modification. See State v. Knutsen, 71 P.3d 1065, 1070 (Idaho Ct. App. 2003) (holding that "the authority conferred by Rule 35 for the trial court to modify a sentence includes authority to suspend a sentence and place the defendant on probation"); see also United States v. Cowan, 34 M.J. 258, 259 (C.M.A. 1992) (stating that discretion "to modify a sentence necessarily includes the power to suspend a sentence"); Soule v. Soule, 87 P. 205, 206 (Cal. Dist. Ct. App. 1906) (holding that authority to modify maintenance order includes authority "to suspend any enforcement of the order until its further direction"). We agree with these holdings.

posed under a mistake about its legal effect on defendant's incarceration"). But such considerations go to whether the court properly exercised its jurisdiction under the circumstances rather than whether it had subject matter jurisdiction over a request such as defendant's. Certainly, the court's decision to exercise its discretion in the manner that it did does not rise to the level of a jurisdictional flaw that would allow, months later, a belated attack on a decision in which all of the parties acquiesced.

¶ 9. This brings us to our second reason why the court's decision to nullify its July 2 order was erroneous. The State did not object to the court's decision to strike defendant's sentence; indeed it acquiesced in the decision. Even if we found that the court improperly exercised its jurisdiction in its July 2 order, that erroneous exercise of jurisdiction is not the type of fundamental jurisdictional defect that would compel this Court, absent a timely objection on jurisdictional grounds, to vacate any order pursuant to the exercise of that jurisdiction.

¶ 10. This Court has acknowledged and adopted the "modern trend 'to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.'" *In re B.C.*, 169 Vt. 1, 8, 726 A.2d 45, 51 (1999) (quoting Restatement (Second) of Judgments § 11 cmt. e (1982)). In *B.C.*, for the first time at the termination hearing, the mother and grandmother of a child who had been adjudicated a child in need of care or supervision (CHINS) sixteen months earlier challenged the family court's subject matter jurisdiction over the CHINS proceeding under the Uniform Child Custody Jurisdiction Act (UCCJA). We rejected the mother's and grandmother's argument that the CHINS finding was void for lack of subject matter jurisdiction, noting that "[w]ithout question, the family court possessed subject matter jurisdiction over

the general type of controversy before it in this case." *B.C.*, 169 Vt. at 7, 726 A.2d at 50. We explained that the UCCJA's statutory criteria were not "equivalent to declarations of subject matter jurisdiction," but rather were merely factors limiting the family court's "ancillary capacity . . . to exercise its authority over a particular case." *Id.* (quotation omitted); see Restatement (Second) of Judgments § 11 cmt. b (contrasting core subject matter jurisdiction, which refers to court's authority to adjudicate type of controversy, with territorial jurisdiction, which allows court to exercise its jurisdiction based on court's relationship to thing or status).

¶ 11. The principles set forth in *B.C.* inform our decision here. As in *B.C.*, in this case the court plainly had subject matter jurisdiction over the type of controversy before it — the motion to modify the preexisting sentence — notwithstanding the status of defendant. Therefore, the July 2 order, to which all parties acquiesced, should not be subject to a belated objection months later on grounds that the court lacked subject matter jurisdiction to preside over the matter.[4] If the State had an objection to

_____

[4] The dissent argues that policy reasons for limiting collateral jurisdictional challenges do not apply in this case because all the actions happened within the same proceeding. We disagree. We cannot think of any area with a greater need to limit collateral jurisdictional attacks than sentencing. The minute a sentence is imposed, especially one involving probation, extensive programming requirements go into effect to determine defendant's responsibilities and the time he will be subject to the control of the Department of Corrections. To allow a jurisdictional challenge to a sentence to occur months or years into the future is to upset the certainty of sentences generally and specifically to make uncertain the validity of any action taken by the defendant or the

the court exercising its jurisdiction to consider defendant's motion, it should have raised the objection at the time the court considered the motion, not months later after a series of events stemming from the order had occurred. See Restatement (Second) of Judgments § 12(1) (stating that judgment can be collaterally attacked for lack of subject matter jurisdiction only when "[th]e subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority").

¶ 12. To be sure, "the essential power of a court to hear a case is granted by force of law, and thus is not subject to stipulation or conduct of the parties involved." *Vt. Union Sch. Dist. No. 21 v. H.P. Cummings Constr. Co.*, 143 Vt. 416, 422, 469 A.2d 742, 746 (1983). But, as explained above, the instant case, unlike *H.P. Cummings*, does not involve "the essential power of a court to hear a case." *Id.* In *H.P. Cummings*, this Court determined that the underlying trial court order was void because the "case was tried before an improperly constituted court." *Id.* at 421, 469 A.2d at 745. Here, in contrast, the district court was not improperly constituted. Nor did the court consider a type of controversy beyond its authority. Rather, at most, the court exercised its jurisdiction beyond that permitted under Rule 35.

¶ 13. For the above reasons, we hold that the State's belated jurisdictional challenge is insufficient to nullify the court's July 2 order suspending defendant's sentence. Therefore, defendant was not under sentence when he filed his subsequent motion to withdraw his plea, and the court had jurisdiction to consider the motion. The trial court must now consider the merits of the motion.

¶ 14. We recognize that, to some extent, the court addressed the merits of defend-

State in reliance on the later-overturned sentence.

ant's renewed motion to withdraw before concluding that it lacked jurisdiction to consider the motion. Nevertheless, because the court made no such merits ruling, the matter must be remanded for the court to do so. As for the standard of review, the court informed the parties at the July 2 hearing that if it had to address the merits of defendant's motion to withdraw at a later time, it would have the parties submit memoranda on whether the proper standard was "manifest injustice" or "fair and just reason." See V.R.Cr.P. 32(d) (stating that court may permit withdrawal of plea if defendant shows "any fair and just reason" before sentence is imposed or "manifest injustice" after sentence is imposed). The parties never addressed which standard applies under the circumstances, and the district court never considered the question because it dismissed defendant's motion to withdraw on jurisdictional grounds without ruling on the merits of the motion. Because of the unusual factual and procedural posture of this case, the district court should rule, in the first instance, on which standard applies under the instant circumstances.

*Reversed and remanded for the superior court, criminal division, to consider defendant's motion to withdraw his plea.*

¶ 15. **Reiber, C.J.,** dissenting. Simply stated, the court lacked jurisdiction over defendant's motion to withdraw his plea. In July, there was no jurisdiction because defendant was in custody under sentence. In September, there was still no jurisdiction because the court's July order striking the sentence was invalid and had no effect. Each of the majority's attempts to identify a rationale for jurisdiction in the trial court at the time of its July order lacks a basis in the law. The parties could not confer jurisdiction on the court by agreement, much less by "acquiesce[nce]." *Ante,* ¶¶ 3 n.1, 11. Nor could the trial court craft a basis itself for jurisdic-

tion by simply renaming the plea withdrawal request a motion to modify or to reconsider. The court lacked authority pursuant to these limited remedies to wholly vacate defendant's sentence. For these and other reasons that follow I would affirm the court's order and therefore respectfully dissent.

¶ 16. Well-settled principles of finality weigh against stretching the boundaries of the district court's post-sentencing jurisdiction through extraordinary means. The State's jurisdictional objection, while later in the proceeding, was nonetheless filed *within the same proceeding*. Thus, policy reasons for limiting collateral jurisdictional challenges do not preclude dismissal in this case. In addition, the majority's conclusion that jurisdiction vests in the trial court in this instance creates at least the appearance of an unfortunate precedent. Should we understand, for example, that motions to reconsider are now a new mechanism to challenge plea agreements on the basis of post-sentencing events? In addition, how should we now understand the Department of Corrections' (DOC) scope of responsibility with respect to those in custody under sentence and the superior court's jurisdiction to entertain post-conviction proceedings for those individuals? This decision would appear to undermine the finality of plea agreements and the supervisory authority of the DOC.

¶ 17. The law to be applied in this case is straightforward. Rule of Criminal Procedure 32(d) states that "a defendant who is not in custody under sentence" may move to withdraw a plea of guilty or nolo contendere within thirty days of judgment. Alternatively, when a defendant is in custody under sentence, a defendant's proper avenue for relief is through a post-conviction relief (PCR) proceeding in the superior court, 13 V.S.A. § 7131, which provides the exclusive remedy. *State v. Wargo*, 168 Vt. 231, 233, 719 A.2d 407, 409 (1998).

¶ 18. Defendant filed post-sentencing motions to nullify his plea and the sentence based on new information that came to light post-sentencing. In support of his motions, defendant argued that an essential part of the plea was his freedom to live in his own home in Massachusetts, and, post-sentencing, he learned this was impossible. On this basis, on July 2, ten days after his sentence was imposed, defendant filed an emergency motion to withdraw his plea. It is undisputed that at that time defendant was in custody under sentence, and, therefore, the court lacked jurisdiction to vacate defendant's plea. See *Wargo*, 168 Vt. at 234-35, 719 A.2d at 409-10 (holding that defendant with a suspended sentence on probation was in custody under sentence and court had no jurisdiction to hear motion to withdraw plea). Nonetheless, no party raised the jurisdictional issue at the time, and the court purported to strike defendant's sentence pending further proceedings.

¶ 19. The majority's characterization of the court's July 2 order as a temporary suspension of defendant's sentence is both contrary to the facts and at odds with the majority's reasoning. *Ante*, ¶ 7 n.3. In July, the court could not have suspended defendant's sentence and placed him on probation because defendant was *already* on probation serving a suspended sentence. The court's order in July placed defendant on pretrial conditions of release, not on probation. Thus, we should recognize the order for what it was — an attempt in vain to vacate the sentence and the plea agreement.[5] I do agree, however, that the court intended its July 2 order to be temporary, providing no basis for appeal.

¶ 20. Because the court lacked jurisdiction over defendant's July 2 motion its

---

[5] Because the sentence was incorporated into the plea agreement it is difficult to understand how the sentence could be vacated without also vacating the entire plea.

resulting action of vacating defendant's sentence was a nullity. *State v. Brooks*, 170 Vt. 597, 599, 750 A.2d 1000, 1002 (2000) (mem.) (explaining that where trial court lacked jurisdiction this Court "will not consider either the court's reasoning or the merits of its decision because the court had no authority over the motion in the first instance"); *State v. Grega*, 170 Vt. 573, 576, 750 A.2d 978, 981 (1999) (mem.) (emphasizing that where court below lacks jurisdiction over motion this Court "will not consider either the court's reasoning or the merits of its decision"). Therefore, when defendant filed his second motion on September 1, he remained in custody under sentence and the district court continued to lack jurisdiction to entertain defendant's motion to withdraw his plea.

¶ 21. I disagree with the majority that the trial court misunderstood that defendant's motions in July were for modification or reconsideration — both motions over which the court had jurisdiction. Certainly, the court retained authority during probation to modify the terms of defendant's probation. See 28 V.S.A. § 253(a) ("During the period of probation, the court, on application of a probation officer or of the offender, or on its own motion, may modify the requirements imposed upon the offender or add further requirements authorized by section 252 of this title."). As such, I would affirm the court's action in January 2010 striking language from one of the continuing special sex offender conditions of probation. But, in July, the court was not addressing modification of the terms of defendant's probation; rather, the court purported to strike defendant's entire sentence — a sentence that was adopted from a plea agreement. Even if defendant had moved to modify, the court was without authority to strike his sentence.

¶ 22. Similarly, I disagree that defendant's July motion sought "relief in the nature of sentence reconsideration," *ante*, ¶ 7, or that vacating defendant's sentence was a remedy available pursuant to such a motion. Sentence reconsideration, 13 V.S.A. § 7042; V.R.Cr.P. 35, is "a limited remedy." *State v. King*, 2007 VT 124, ¶ 6, 183 Vt. 539, 944 A.2d 224 (mem.). It is intended to allow the trial court a second opportunity to consider the circumstances present at the original sentencing absent the emotion of trial, but "[i]t is not intended as a forum to review post-incarceration circumstances or events." *Id.* It is of limited usefulness where the sentence was based on a plea bargain because it is assumed that the defendant agreed to the terms of the plea. *Id.* ¶ 7. Further, it cannot be used to interfere with the DOC's discretion over carrying out the sentence. *State v. Martinsen*, 156 Vt. 643, 644, 590 A.2d 885, 886 (1991) (mem.). Here, defendant's request was beyond the scope of a motion to reconsider because he sought to withdraw his plea post-sentencing based on what he discovered post-sentencing about the manner in which the DOC carried out the terms of his sentence. The majority's reasoning that these limitations go to the proper exercise of the court's jurisdiction, rather than whether the court had subject matter jurisdiction in the first instance, effectively transforms every post-sentencing motion to withdraw a plea into one for reconsideration. *Ante*, ¶ 8. It also ignores the fact that the court could not *vacate* defendant's sentence in response to a motion to reconsider. See V.R.Cr.P. 35(b) (granting court authority to reduce sentence following motion to reconsider).

¶ 23. Only a motion to withdraw defendant's plea could provide the court with authority to vacate defendant's sentence, but at the time defendant's motion was filed there was no longer jurisdiction for such a motion because defendant was in custody under sentence. V.R.Cr.P. 32(d). A motion to reconsider does not alter that result. To follow the majority's reasoning otherwise effects a new excep-

tion to the exclusive jurisdiction of the superior court under provisions of the PCR statute, 13 V.S.A. § 7131, for those in custody under sentence.

¶ 24. The majority's answer to these gaps in reasoning seems to be that either the State waived its jurisdictional challenge by initially agreeing to the court's order or by objecting too late, or that the issue was not true subject matter jurisdiction. Neither argument is supported by our law.

¶ 25. First, the State's failure to immediately oppose defendant's motion on jurisdictional grounds does not alter the analysis. Even assuming the State initially assented to the court's act of striking defendant's sentence on July 2, such an agreement has no bearing on the court's jurisdiction. "Subject matter jurisdiction cannot be conferred by agreement or consent of the parties when it is not given by law." *Shute v. Shute*, 158 Vt. 242, 248, 607 A.2d 890, 894 (1992). Moreover, our law has never limited jurisdictional challenges to those coming early, rather than "belatedly," during litigation. *Ante*, ¶ 6. The majority's conclusion that the State's challenge lacks credence because it was "belated" is supported by no law. *Ante*, ¶¶ 6, 8. In fact, jurisdiction may be raised at any time within a proceeding. Indeed, this Court has in the past dismissed motions to withdraw for lack of jurisdiction even when the jurisdictional issue was not raised in the trial court and considered for the first time on appeal. See, e.g., *State v. Forney*, No. 2007-392, 2008 WL 2792774 (Vt. Apr. 11, 2008) (unpub. mem.); *State v. Wisell*, 137 Vt. 182, 400 A.2d 998 (1979); cf. *In re LaMountain*, 170 Vt. 642, 752 A.2d 24 (2000) (mem.) (dismissing post-conviction petition for lack of jurisdiction because petitioner was not in custody where jurisdictional claim was first raised on appeal). The result here should be no different. Further, unlike the case cited by the majority, *In re B.C.*, the State's jurisdic-

tional objection did not attack a final order, but was raised before the court had definitively disposed of defendant's motion to withdraw his plea. 169 Vt. 1, 6-7, 726 A.2d 45, 50 (1999). As such, the policy reasons for precluding collateral attacks do not apply.

¶ 26. Second, the majority's claim that the district court "plainly had subject matter jurisdiction over the type of controversy before it," *ante*, ¶ 11, is at odds with our law and precedent. Defendant did not seek a type of general relief over which there was no specific delegation of authority. Jurisdiction over post-sentencing motions is strictly defined by rule and statute. Thus, our cases have uniformly limited the district court's jurisdiction to entertain Rule 32(d) motions to situations where the defendant is not in custody under sentence. See, e.g., *Brooks*, 170 Vt. at 599, 750 A.2d at 1002; *Wargo*, 168 Vt. at 234-35, 719 A.2d at 409-10; *State v. Cooley*, 135 Vt. 409, 411, 377 A.2d 1386, 1387 (1977). The necessity of constraining the district court's jurisdiction in this manner is to avoid a "direct conflict with the statutes of this State relating to post-conviction relief." *Cooley*, 135 Vt. at 411, 377 A.2d at 1387.

¶ 27. Because defendant was in custody under sentence, the court lacked jurisdiction to entertain his motion to withdraw his plea. Defendant's proper avenue for relief was, and continues to be, through filing a PCR petition in the civil division. Thus, I would affirm the court's order dismissing defendant's motion.

¶ 28. I am authorized to state that Justice Burgess joins in this dissent.