2011 VT 130

**Joshua HANDVERGER v. CITY OF WINOOSKI and J. William O'Brien, Esq.**

[38 A.3d 1153]

No. 10-174

¶ 1. November 29, 2011. Plaintiff Joshua Handverger, the former city manager of the City of Winooski, appeals from the trial court's dismissal of his claim for extraordinary relief against the City under Vermont Rule of Civil Procedure 75 and a related wage claim for double damages under 21 V.S.A. § 347. Plaintiff complains that the Winooski City Council improperly terminated his employment by failing to give him a public hearing between fifteen and thirty days after the city council voted to dismiss him, as provided in the Winooski City Charter. The trial court ruled that since the charter, enacted by the Legislature and codified at 24 V.S.A. Appendix chapter 17, explicitly bars judicial review of any action suspending or removing the city manager, plaintiff was not entitled to review of the City's action under Rule 75. We agree and therefore affirm.

¶ 2. Plaintiff was hired on October 1, 2007. At that time, he signed a contract that explicitly made him an "at will" employee during his first year of employment, permitting the City to dismiss him without cause at any time during the first year. The contract further provided that, after the first year, the City could dismiss plaintiff only for "just cause." On September 22, 2008, ten days before the one-year anniversary of his hire date, the city council voted to remove plaintiff. Plaintiff responded on September 27 by requesting an open hearing pursuant to the following provision in the city charter:

> Within five days after a copy of the resolution is delivered to the manager, the manager may file with the council a written request for a public hearing. This hearing shall be held at a council meeting not earlier than 15 days nor later than 30 days after the request is filed.

24 V.S.A. App. ch. 17, § 3.3(a)(2).

¶ 3. The next day, September 28, the City offered to hold an open hearing two days hence, but asserted that the charter's hearing provisions were inapplicable due to plaintiff's at-will contract. Out of state for a religious holiday and wanting more time to prepare, plaintiff on September 30 filed a demand for a later hearing conforming to the § 3.3(a)(2) timeframe. The City offered, in response, to hold a hearing sometime later on the condition that plaintiff waive all time-related claims he might make due to the delay in holding the hearing. The City acknowledged at oral argument that this condition was to avoid a demand by plaintiff for the City to show cause for his dismissal, since a later hearing would not have occurred until after the expiration of his at-will probationary period. Plaintiff did not answer this conditional offer, and the city council proceeded with the open hearing as originally scheduled, voting to confirm plaintiff's removal.

¶ 4. Plaintiff contested the City's decision in superior court, seeking review of governmental action and extraordinary relief under Rule 75, as well as double damages for failure to pay wages, and making other claims against the City and its attorney, including a federal civil rights claim.[1] The City removed the matter to federal district court. The federal court returned the state law claims to superior court and stayed consideration of the federal claims until completion of the state proceedings. At plaintiff's request, the superior court first considered his Rule 75 motion before ruling on his other claims. Relying on the following charter provision, the court held that the city charter foreclosed any form of judicial appeal and therefore precluded Rule 75 review: "The action of the council in suspending or removing the manager shall not be subject to review by any court or agency." Id. § 3.3(b). The court emphasized that plaintiff was "not being denied [his] ability to challenge his termination in court, as is evidenced by the other counts in his complaint, now pending in both state and federal court." According to the court, its decision was only that "the specific claim under Rule 75 for mandamus or certiorari" was inapplicable. Plaintiff then dropped all claims except the Rule 75 action and wage claim, requesting a partial final judgment in favor of the City so he could appeal.[2] The trial court entered the order, and the instant appeal followed.

---

[1] See 42 U.S.C. § 1983. This cause of action, along with the wage violation claimed under 21 V.S.A. § 347, are not at issue in this appeal.

[2] Plaintiff's claims against the City's attorney were unaffected by the order and are not at issue in this appeal.

¶ 5. On appeal, plaintiff dedicates a major portion of his brief to his argument that his employment agreement with the city establishing a one-year at-will employment period did not trump the removal procedures set forth in the city charter. The trial court did not consider this issue, instead addressing the primary question of whether plaintiff was entitled to judicial review at all under Rule 75, given the charter provision barring any court or agency review of an action to remove the city manager. Accordingly, we first address whether the trial court erred in ruling that Rule 75 did not provide a basis for plaintiff to challenge the City's removal decision.

¶ 6. Plaintiff devotes three pages of his brief to this issue. He argues for the first time on appeal that because the City's failure to follow removal procedures set forth in the charter amounted to a jurisdictional failure rather than a substantive "action," review was not barred by the charter provision foreclosing court or agency review of the city council's "action" removing a city manager. Because this "jurisdictional" argument is actually an attack on the manner in which the City exercised its jurisdiction rather than on the authority of the City to consider such matters, we decline to consider this argument for the first time on appeal. See *State v. Thompson*, 2011 VT 98, ¶¶ 10-12, 190 Vt. 605, 30 A.3d 671 (mem.) (noting this Court's adoption of modern trend to reduce vulnerability of final judgments to attack on grounds that tribunal lacked subject matter jurisdiction and recognizing that true subject matter jurisdiction concerns whether tribunal had authority to adjudicate type of controversy at issue rather than whether tribunal exercised that authority in impermissible manner); *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (stating our repeated admonition that issues are not preserved for review on appeal unless they were presented below with specificity and clar-ity so as to provide trial court with opportunity to rule on them).

¶ 7. That leaves us with plaintiff's brief argument that Chapter I, Article 4 of the Vermont Constitution guarantees his right to judicial review notwithstanding the charter provision precluding it. On numerous occasions over the years, we have addressed claims made pursuant to this clause, which states, in relevant part, as follows: "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character." Vt. Const. ch. I, art. 4. "We have treated Article 4 as the Vermont equivalent of the federal constitution's Due Process Clause, and we have interpreted Article 4 as requiring adequate access to judicial process." *Holton v. Dep't of Emp't & Training*, 2005 VT 42, ¶ 27, 178 Vt. 147, 878 A.2d 1051 (citations omitted). Plaintiff does not argue a lack of due process under a federal due process analysis, but rather contends that the instant case is controlled by *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 536 A.2d 925 (1987), and not *Mason v. Thetford School Board*, 142 Vt. 495, 457 A.2d 647 (1983).

¶ 8. Rule 75 allows review of determinations by the state or its political subdivisions to the superior court if "such review is otherwise available by law." V.R.C.P. 75(a). There is no general right of appeal, so the right to review must be derived from statute, common law, or the constitution. See *Mason*, 142 Vt. at 498, 457 A.2d at 649 (holding that in context of administrative decision, there is no "absolute right to appellate review," and that "the legislature has the power, in the absence of any constitutional requirement, to deny such review"). By the same token, the Supreme Court may not hear appeals when the Legislature has not authorized them and the Constitution does not mandate an opportunity for appeal. *In re Rhodes*, 131 Vt. 308, 310, 305 A.2d 591, 592 (1973).

¶ 9. The Winooski City Charter, approved and adopted by the Legislature, has the force and effect of a statute as it applies to the specified municipality. *City of Burlington v. Fairpoint Commc'ns, Inc.*, 2009 VT 59, ¶ 10, 186 Vt. 332, 980 A.2d 226. The charter's provision that the council's "action . . . removing the manager shall not be subject to review by any court" literally forecloses any judicial appeal from the City's decision. In *Mason*, the Court held that a legislative provision declaring that the state school board's decision to affirm a local school's denial of tuition vouchers for a student "shall be final" meant that the Legislature barred judicial review. 142 Vt. at 498-99, 457 A.2d at 649. The Court explained: "The expression of finality in 16 V.S.A. § 827(d) must be interpreted according to its ordinary meaning. The natural and ordinary meaning of a provision stating that the action of a tribunal shall be final is that such action is not subject to review." *Id.* at 498, 457 A.2d at 649 (citation omitted). Because the statutory language was unambiguous, the Court concluded that the board's decision was not reviewable.

¶ 10. Plaintiff urges that *Mason* is inapplicable and that *Vincent* controls instead. In *Vincent*, an injured employee was allowed to appeal a denial of full disability benefits by the state retirement board. But the statute in that case did not state, as in *Mason*, that the Board's decision "shall be final." Rather, the statute at issue in *Vincent* stated only that administrative hearings before the retirement board would be decided "in such manner as the retirement board shall determine." 148 Vt. at 534, 536 A.2d at 927 (quotation omitted). Finding that this clause did not so clearly declare finality, this Court was "hesitant to interpret arguably ambiguous legislation as foreclosing judicial review of administrative agency decisions." *Id.* at 534 n.2, 536 A.2d at 927 n.2.

¶ 11. Plaintiff reads *Vincent* as primarily promoting judicial redress "for all injuries or wrongs" as guaranteed by Chapter I, Article 4 of the state constitution. *Id.* But that was not the holding in *Vincent*. The availability of judicial review in *Vincent* arose not from the Vermont Constitution, but rather from the Legislature's failure to state plainly that the Board's review was final. *Id.* Therefore, *Vincent* is not inconsistent with *Mason*, which controls the instant case. Indeed, the city charter's statutory grant of finality in this case, which provides that the council's removal decision "shall not be subject to review by any court," is as unambiguous as the finality statute in *Mason*. Moreover, the Legislature instructs in the charter that its provisions must be "construed liberally in favor of the city." 24 V.S.A. Appendix chapter 17, § 1.3. The different result in *Vincent*, based on a far less explicit statute with no such added instruction favoring the government, is inapposite to the instant situation.

¶ 12. As noted, this Court has read Article 4 to require "adequate access to judicial process" to vindicate the interest for which due process protection is sought. With statutory rights, however, what constitutes "adequate" court access is necessarily tempered by the interest created by the Legislature in the first instance and its provision for, or denial of, process. Thus, in *Howard v. Office of Secretary of State*, we held that judicial review of an employee's compensation award could be curtailed by the Legislature because the "rights, if any, of the employee here are created by the statute, and the remedy is an integral part of the right given; it has no existence separate and apart from the remedy." 140 Vt. 139, 141, 435 A.2d 962, 963 (1981) (disallowing appeal from state board's decision denying workers' compensation benefits where applicable statute provided that "[t]he decisions of the board shall be final."). The same is true here. Whatever interest plaintiff had in the city charter's

removal procedures, it remained subject to the balance of charter provisions that include no express remedy available to him, while expressly precluding any appellate review. Plaintiff has failed to demonstrate, or even argue, that the City's actions in removing him without first providing the process set forth in the charter — considering the specific circumstances of this case — violated principles of federal due process so that we must ignore the charter's explicit ban on judicial review.

¶ 13. "We have held on many occasions that there is no absolute right to appellate review of administrative decisions. Moreover, the legislature has the power, in the absence of any constitutional requirement, to deny such review." *Mason*, 142 Vt. at 498, 457 A.2d at 649 (citations omitted). Here, the Legislature provided no right of review for plaintiff's benefit. Further, Chapter I, Article 4 creates no right of review beyond that which the Legislature declined to provide in the charter. Therefore, review under Rule 75 is not available to plaintiff. Given our resolution of this issue, we need not consider plaintiff's argument that the at-will provision in his employment contract neither trumps the city charter nor is inconsistent with the charter's procedural protections.

*Affirmed.*