NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 56

No. 2016-298

| | |
|---|---|
| In re PATH at Stone Summit, Inc. (Concerned Neighbors, Appellants) | Supreme Court |
| | On Appeal from Green Mountain Care Board |
| | February Term, 2017 |

Alfred Gobeille, Chair

A. Jay Kenlan, Rutland, for Appellants.

William H. Sorrell, Attorney General, and Bridget C. Asay, Solicitor General, and
  Benjamin D. Battles, Assistant Attorney General, Montpelier, for Appellee.


PRESENT: Dooley, Skoglund, Robinson and Eaton, JJ., and Davenport, Supr. J. (Ret.),
Specially Assigned


¶ 1. **ROBINSON, J.** Neighbors are a group of property owners in the neighborhood of PATH at Stone Summit, Inc.'s proposed therapeutic community residence in Danby. They appeal the Green Mountain Care Board's decision that the proposed project could proceed without a certificate of need under 18 V.S.A. § 9434(a)(5). We conclude that the appeal is not properly before this Court because Neighbors failed to timely file a petition to become interested parties. Accordingly, we dismiss Neighbors' appeal.

¶ 2. To better explain the events that gave rise to this appeal, we review the relevant aspects of the Board's certificate of need (CON) process. The Legislature has charged the Board with regulating the development of health care projects across the state. 18 V.S.A. §§ 9431-9446. Under 18 V.S.A. § 9434, those seeking to develop a "new health care project" cannot begin

development before obtaining a CON from the Board. The definition of "new health care project" includes several triggers, any one of which renders a project a "new health care project" subject to the CON requirement. 18 V.S.A. § 9434. The provision relevant to this appeal requires a CON for a project that has "an annual operating expense which exceeds $500,000.00 for either of the next two budgeted fiscal years." Id. § 9434(a)(5). If the applicant agrees that a CON is necessary for the project, the applicant may file a CON application with the Board without further process. Id. § 9440(c)(2)(B). Otherwise, the applicant must file a letter of intent, which the Board reviews to determine whether the applicant must seek a CON for the project. Id. § 9440(c)(2)(A), (c)(3). The Board requires the letter of intent to include, at a minimum, a summary of the proposed project, its projected expenses, and any additional information necessary to determine if a CON is necessary. Certificate of Need Rule 4.301(2), Code of Vt. Rules 80 280 004 [hereinafter CON Rule], https://www.lexisnexis.com/hottopics/codeofvtrules/ [https://perma.cc/NJ7K-7GVG].[1]

¶ 3. If the Board concludes that a CON is necessary, the applicant must file an application before beginning development of the project. 18 V.S.A. § 9440(c)(3). If the Board determines that a CON is not required, "a health care facility may commence the proposed project without risk of penalty or sanction." CON Rule 4.301(4). To the extent the "project changes from that described in the letter of intent, the health care facility shall notify the Board, which shall notify the health care facility of any further necessary process." Id. "If the Board subsequently determines that a no jurisdiction determination was based on partial, incorrect, inaccurate or misleading information, the Board may rescind its determination, assert jurisdiction over the project, and may impose sanctions." CON Rule 4.301(5); see also 18 V.S.A. § 9445 (describing Board's enforcement powers).

---

[1] CON Rule 4.301 contains two different subdivisions marked with a "2." This citation is referring to the first of those subdivisions.

¶ 4.    When the applicant files a letter of intent, the Board must post public notice of the letter on its website within five business days of receiving the letter.  18 V.S.A. § 9440(c)(2)(A).  Pursuant to CON Rule 4.301(2)[2], the applicant is also required to provide public notice of the letter of intent.[3]  Petitions to intervene as interested parties must be filed within twenty days of the Board's public notice of the letter.  18 V.S.A. § 9440(c)(7).[4]  The Board grants interested party status to those "who demonstrate that they will be substantially and directly affected by the new health care project under review."  Id.  Under § 9440(f), "[a]ny applicant, competing applicant, or interested party aggrieved by a final decision of the Board" may appeal the decision pursuant to § 9381.  Section 9381 allows parties to appeal Board decisions to this Court after they exhaust all administrative remedies.  Id. § 9381(b).

¶ 5.    In this case, pursuant to 18 V.S.A. § 9440(c)(2)(A), PATH filed a letter of intent with the Board on March 22, 2016.  The letter explained that PATH was proposing to open a residential treatment center for adults between the ages of eighteen and twenty-nine who are struggling with mental health issues such as depression, anxiety, bipolar disorder, substance abuse, and personality disorders.  It explained PATH's approach to treatment, described the facility PATH would rent in Danby, listed the staff that PATH would employ and the compensation they

---

[2]  This citation is referring to the second of the CON Rule 4.301 subdivisions marked with a "2."

[3]  CON Rule 4.301(2) cites 18 V.S.A. § 9440(c)(2)(A) to support its requirements that the applicant provide public notice, file a statement with the Board certifying that it has done so, and attaching a copy of the public notice.  Section 9440(c)(2)(A), on the other hand, expressly requires the Board itself to provide public notice on its website within five business days of receipt and says nothing about a separate obligation on the part of the applicant to provide public notice.  We need not resolve this discrepancy in this case because Neighbors do not dispute the Board's representation that both the applicant and the Board provided public notice.

[4]  Although the Board's rules require the applicant to post public notice of the letter of intent, the statute does not.  Because the twenty-day limitation appears in the same statutory section as the requirement that the Board post notice of the letter of intent, we infer that the Board's public notice through posting on its website starts the statutory twenty-day clock for petitions to intervene.

3

would receive, and explained what fees PATH would charge its residents. It stated that PATH would initially accept six residents, but would reach its full capacity of eight residents by year three. PATH also attached the projected operating costs over the next three years. It estimated the total expenses for the first year to be $413,373, the second year to be $449,871, and the third year to be $462,219.

¶ 6. Neighbors do not dispute the Board's representations that PATH posted notice of the letter in regional newspapers on March 28 and the Board posted notice on its website. Although the specific date of the Board's notice is not in the record, Neighbors have not argued that the Board failed to post the notice within five business days of receiving the letter of intent, as required by 18 V.S.A. § 9440(c)(2)(A), or that Neighbors requested interested party status within twenty days of the Board's posting.

¶ 7. On April 7, the Board's senior policy analyst notified PATH that it did not need to apply for a CON. The letter stated, "[b]ased on the representations contained in the documents and spreadsheet submitted . . . the annual operating expenses for the first three years are under the $500,000 threshold that triggers review." The policy analyst added that, "if there are changes in the future in the type or scope, annual operating expenses or planned expansions, please notify the [Board] immediately so that we may determine whether further review is required."

¶ 8. On May 12, the Board's general counsel contacted PATH's lawyer, stating that the Board had received an inquiry into the accuracy of PATH's expenses. The general counsel explained that "PATH's cost projections appear reasonable and inclusive of all anticipated expenses." However, given the proximity of PATH's operating expenses to the statutory threshold, she requested that PATH review its projections and either confirm that those expenses remained below the $500,000 threshold or begin a CON application.

¶ 9. On May 13, two Danby residents emailed the Board Chair about PATH's letter of intent, arguing that the Board should not allow the project to go forward because PATH had

4

underestimated its expenses and because the project presented a risk to the neighborhood. The email included a detailed list of perceived errors in the narrative accompanying PATH's letter of intent, arguing that "PATH has intentionally underestimated their annual operating expenses in order to keep these costs below the threshold that would trigger" CON review.[5]

¶ 10. On June 6, PATH submitted an updated narrative to the Board. The most significant difference between the original and updated narratives was that the latter reduced the initial number of residents to four until PATH installed a new septic system; the maximum number of residents remained at eight. PATH maintained that annual operating expenses would be under $500,000.

¶ 11. On June 24, a lawyer representing Neighbors spoke with the general counsel by phone, and then they exchanged emails about the updated narrative provided by PATH. The lawyer wrote that he expected the Board to issue a "formal statement" in response to the changes reflected in PATH's updated narrative. In her reply, the general counsel explained that PATH's updated narrative did not include material changes that triggered the Board's jurisdiction and the Board would not issue another "formal statement." She noted that PATH had been notified that if its projected budget were to increase and trigger CON review, it was required to notify the Board and commence the CON application.

¶ 12. On July 6, Neighbor's lawyer wrote the Board Chair seeking interested person status for Neighbors. Neighbors claimed that PATH misrepresented and underestimated its projected expenses in order to avoid the CON process. They noted that the updated narrative's reduction in initial residents would have a negative impact on PATH's revenues, but that PATH did not amend its projected expenses to reflect that change. Neighbors argued that an insufficient

_____

[5] Documents in the Board's file also reflect that Neighbors were simultaneously challenging PATH's request for licensure by the Department of Aging and Independent Living to operate the facility in question.

5

budget for the project would result in inadequate treatment and supervision of PATH's residents, which would put nearby residents at risk. They contended that the Board had neglected its duty to scrutinize PATH's proposed expenditures to determine whether the total amount was reasonable, and that an adequate budget would likely exceed $500,000.

¶ 13. The Board's general counsel responded to the lawyer's letter on July 19. She reiterated that PATH's initial projections were "reasonable" and "based on realistic assumptions" and that, despite Neighbors' allegations regarding PATH's expenses, "the Board declined to rescind its initial determination that the project is not subject to CON review." Concerning the updated narrative, she stated that, "[c]onsidering that there will be fewer residents at the facility (needing fewer services) and that the [u]pdated [n]arrative contains no changes that plausibly add to projected expenses, we do not agree that there has been a 'significant change' that triggers Board jurisdiction." Regarding Neighbors' request for interested party status, the general counsel denied the request, stating, "because the Board does not have CON jurisdiction and there is no application 'under review,' there is no proceeding to which the individual Neighbors can intervene."

¶ 14. Neighbors appealed to this Court. The Board moved to dismiss Neighbors' appeal on several grounds. First, the Board contends that Neighbors lack standing to appeal because they missed the deadline to file for interested party status and therefore have no right to appeal under the statute. Second, the Board argues that the appeal is untimely because Neighbors filed it more than thirty days after the Board determined that PATH need not file for a CON, the deadline for appeals established by Vermont Rule of Appellate Procedure 4(a)(1). Third, the Board argues that, if Neighbors do have standing, the July 19 letter did not constitute a final judgment from which Neighbors could have appealed. We consolidated consideration of the Board's motion with the merits.

¶ 15. On appeal, Neighbors make three arguments. First, they argue that the Board improperly delegated its authority to review PATH's letter of intent and updated narrative to its

staff members.  They contend that the Board never formally considered PATH's letter of intent or updated narrative, and never collectively made a decision regarding PATH's proposal.  Instead, they argue that the Board unlawfully delegated this power to its staff members who had no authority to make a final determination as to whether PATH must apply for a CON under the statute.  Second, Neighbors argue that, even if there was no unlawful delegation, the Board failed to make adequate findings of fact to support its decision and thus the decision must be remanded for the Board to justify the determination that PATH does not need a CON.  Third, they argue that PATH's updated narrative proposed material changes to the original letter of intent which warranted further review by the Board.  With respect to the timeliness of their challenge, Neighbors treat PATH's updated narrative as essentially initiating a new proceeding, and the general counsel's July 19 letter as a distinct Board action.  They also argue that because neither the policy analyst nor the general counsel had authority to make the determinations at issue, which are by statute committed to the Board, no legally effective decision has yet been made, and none of the statutory periods have run.

¶ 16.   We agree with the Board, and dismiss this appeal for several reasons.  First, we conclude that we have no authority to hear an appeal of the Board's April 7 determination that PATH need not apply for a CON on two grounds—Neighbors lacked standing to bring the appeal because they were not interested parties under the statute and they failed to file a timely notice of appeal.  Next, we reject Neighbors' arguments that PATH's updated narrative and the Board's July 19 letter to Neighbors' lawyer created a renewed opportunity to file for interested party status as well as a new jurisdictional decision from which they could appeal.  Finally, we reject Neighbors' argument that because the Board itself did not make the decisions at issue, no legally effective decision has been made and no periods have run.

7

¶ 17.    First and foremost, we conclude that Neighbors lack standing to appeal the Board's April 7 decision that PATH need not file a CON application for two reasons: they are not interested parties, and, even if they were, they did not timely appeal the April 7 decision.

¶ 18.    "[T]here is no absolute right to appellate review of administrative decisions," so the Legislature has the power to define and restrict such review. Mason v. Thetford Sch. Bd., 142 Vt. 495, 498, 457 A.2d 647, 649 (1983); see also Handverger v. City of Winooski, 2011 VT 130, ¶ 13, 191 Vt. 556, 38 A.3d 1153 (mem.) ("[T]he Legislature has the power, in the absence of any constitutional requirement, to deny [review of administrative decisions].").  When the Legislature has specifically mandated which parties have standing to appeal a case, we have held that this Court must adhere to those restrictions and "may not judicially expand the class of persons entitled to such review." Garzo v. Stowe Bd. of Adjustment, 144 Vt. 298, 302, 476 A.2d 125, 128 (1984) (holding that plaintiff had no standing to compel enforcement of zoning bylaw when he was not an "interested person" under zoning statute).  When interpreting a statute, our objective is "to effectuate the Legislature's intent," and we "enforce the plain meaning of the statutory language where the Legislature's intent is evident from it." See In re Carroll, 2007 VT 19, ¶ 9, 181 Vt. 383, 925 A.2d 990.  Whether a party has standing is a legal question that we review without deference. Corcoran v. Dep't of Emp't & Training, 2005 VT 52, ¶ 3, 178 Vt. 579, 878 A.2d 1069 (mem.).

¶ 19.    The relevant statute here expressly limits the right to appeal the Board's decisions concerning certificates of need to "[a]ny applicant, competing applicant, or interested party aggrieved by a final decision of the Board."  18 V.S.A. § 9440(f).  Because Neighbors were not applicants or competing applicants, they must be interested parties to have standing to file an appeal.

¶ 20.    Neighbors here are not interested parties.  As noted above, the relevant statute provides: "A petition seeking interested party or amicus curiae status must be filed within [twenty] days following public notice of the letter of intent." Id. § 9440(c)(7).  In this case, PATH filed its

8

letter of intent on March 22. Neighbors do not contest the Board's representation that it posted PATH's letter of intent on its web site. Neighbors did not seek interested party status until July 6, long after the twenty-day window had closed. Because Neighbors failed to timely intervene, the Board rightly denied them interested party status and they have no standing under § 9440(f) to appeal the Board's April 7 decision.

¶ 21. Moreover, Neighbors also failed to timely appeal the Board's April 7 decision. "The timely filing of a notice of appeal is a jurisdictional requirement," and "[w]e require strict adherence to deadlines for notices of appeal." Casella Constr., Inc. v. Dep't of Taxes, 2005 VT 18, ¶¶ 3, 6, 178 Vt. 61, 869 A.2d 157. Vermont Rule of Appellate Procedure 4(a)(1) requires parties to file a notice of appeal "within 30 days after entry of the judgment or order appealed from." On April 7, the Board issued a decision concluding that PATH need not file a CON application because its expenses were under the statute's $500,000 threshold. Therefore, even if they had standing, Neighbors would have had until May 7 to appeal that decision. Instead, they filed a notice of appeal on August 12. Consequently, this Court would not have jurisdiction over this appeal even if they had standing to appeal the Board's April 7 decision.

¶ 22. We are not persuaded by Neighbors' argument that PATH's submission of an updated narrative that included changes that did not substantially increase PATH's projected annual operating expenses and the Board's July 19 letter reaffirming the Board's determination created a new opportunity for Neighbors to intervene as interested parties and a new decision from which to appeal because there is no statutory support for this argument. We conclude that this post-determination correspondence was not tantamount to a new letter of intent, thereby opening a new period for requests for interested party status pursuant to 18 V.S.A. § 9440(c)(7) and creating a new decision from which to appeal.

¶ 23. We reach this conclusion for several reasons. First, the updated narrative from PATH was provided to apprise the Board about changes to the project, and did not amount to a

9

new letter of intent. Second, the updated narrative in this case did not reflect substantial increased operating expenses. Finally, the Board's final letter in this case did not purport to be a new determination of whether a CON was required. If anything, it was more akin to a decision to not exercise its enforcement authority with respect to this project.

¶ 24. The post-determination submission by PATH triggered Board review pursuant to CON Rule 4.301(4), and was not a new letter of intent. As noted above, the governing statute and rules establish specific timelines and procedures for evaluating whether a proposed project requires a certificate of need. The statute and rules specifically allow for the participation of interested parties, subject to strict timelines for requests for party status. 18 V.S.A. § 9440(c)(7). But the rules also provide that post-determination, to the extent that a project changes from that described in the letter of intent, the health care facility shall notify the Board, which shall, in turn, notify the health care facility of any further necessary process. CON Rule 4.301(4). This subsection provides for Board review of changes to a project without any accompanying opportunity for participation by persons or organizations not previously awarded party status. Although the Board's response to changes in the proposed project may trigger such an opportunity because the Board could potentially require a new letter of intent or an application for a CON, the Board's initial review of the proposed changes does not.

¶ 25. That the changes to PATH's narrative in this case would only reduce its annual operating expenses reinforces our conclusion in this case. We acknowledge Neighbors' argument that the framework described above could allow applicants to circumvent public participation by intentionally understating their projected expenses until after the window for seeking interested party status has closed and the Board has made an initial determination. Even significant subsequent changes, while still subject to review by the Board, would not open the door to participation by interested parties. We need not decide whether there may be cases in which changes to a proposed project are so substantial that public notice and an opportunity for qualifying

10

persons or organizations to request party status are required. In this case, the changes to the proposed project—initially, it will accept two fewer patients than originally projected—will not plausibly increase its annual operating expenses. Neighbors do not object to a reduced number of patients at the outset of the project, and do not contend that this reduction will increase PATH's operating expenses above the $500,000 threshold. Instead, their arguments with respect to the slightly revised project are largely the same as their arguments that the original proposal outlined in connection with PATH's letter of intent requires a CON: they believe the facility will cost more than projected, and that, properly financed, will require more than $500,000 in annual operating expenses. If there is a case where post-jurisdictional-determination changes to a project are so substantial that they require a new letter of intent or CON application, with the attendant opportunities for others to seek party status, this is not it.

¶ 26. And on its face, the Board's July 19 letter did not constitute a new decision from which Neighbors could appeal. That letter explained that the Board was not rescinding its initial determination that PATH did not need to apply for a CON and that PATH's updated narrative did not bring it under the Board's CON jurisdiction. At most, that letter was an exercise of the Board's enforcement powers pursuant to 18 V.S.A. § 9445, as a decision <u>not to</u> enforce the statutes' requirements upon PATH. See also CON Rule 4.301(5) ("If the Board subsequently determines that a no jurisdiction determination was based on partial, incorrect, inaccurate, or misleading information, the Board may rescind its determination, assert jurisdiction over the project, and may impose sanctions."). The letter was not a new jurisdictional decision by the Board and therefore was not a decision that Neighbors could appeal to this Court.

¶ 27. Finally, we reject Neighbors' argument, first articulated in its reply brief, that because the policy analyst and general counsel had no authority to make the determinations at issue, no legally effective decision has been made and accordingly no time periods have run. Neighbors point to the minutes of the Board's meetings during the entire relevant period and note

11

that there is no indication that the Board, rather than its policy analyst and general counsel, ever itself considered or ruled on the jurisdictional question. They argue that the jurisdictional determination is one that is assigned by statute to the Board. Although the Board may rely on staff to do research, provide counsel, or make recommendations, in the absence of any statutory authority to delegate the actual decisionmaking to staff, the Board cannot do so. Because the initial jurisdictional determination and the refusal to rescind that determination were both made by staff people without any apparent action by the Board, Neighbors argue the timelines have not run and its appeal is untimely.[6] Neighbors' arguments concerning the authority of the policy analyst and general counsel to make legally binding jurisdictional determinations without the Board actually voting on the question are substantial and potentially meritorious. However, they cannot surmount Neighbors' lack of standing to prosecute this appeal.

¶ 28. Assuming for purposes of this analysis only that the Board has not yet made a final, appealable decision on the jurisdictional determination, that would still not confer standing to appeal on these plaintiffs. While it may render this appeal timely (in fact, premature), it would do nothing to salvage the untimeliness of Neighbors' attempt to secure party status. The period for seeking interested party status is triggered by publication of the letter of intent, not the Board's determination. Neighbors do not argue and cannot argue that they sought interested party status within twenty days of publication of PATH's letter of intent in this case.

¶ 29. Moreover, the Board has clearly adopted the decisions of its staff members as its own. Neighbors' challenge to the process by which the Board reached its decisions, like the challenge to the merits of those decisions, must be properly raised in a timely appeal by a party

_____

[6] The Board does not contest Neighbors' assertion, and does not suggest that the Board itself, rather than its policy analyst and general counsel, made these determinations. Instead, it takes the position that the Board appropriately delegated the threshold determination of CON jurisdiction to its staff.

12

with standing.  For the above reasons, we grant the Board's motion to dismiss this appeal and decline to address the merits of Neighbors' challenges.

Neighbors' appeal is dismissed.

FOR THE COURT:

_____
Associate Justice

¶ 30.  **DOOLEY, J., concurring.**  I fully concur in the opinion for the majority and join it.  I write to make clear that this decision does not mean that Neighbors have been found to be interested parties who could participate in CON review procedures before the Board if they had sought intervention within time deadlines.  An interested party is defined as "persons or organizations representing the interests of persons who demonstrate that they will be substantially and directly affected by the new health care project under review."  18 V.S.A. § 9440(c)(7).  This relatively broad definition must be read in relation to the scope and purpose of CON review.  As it is stated in the policy and purpose provision in the governing statutes:

> It is declared to be the public policy of this state that the general welfare and protection of the lives, health, and property of the people of this state require that all new health care projects be offered or developed in a manner which avoids unnecessary duplication and contains or reduces increases in the cost of delivering services, while at the same time maintaining and improving the quality of and access to health care services, and promoting rational allocation of health care resources in the state; and that the need, cost, type, level, quality, and feasibility of providing any new health care project be subject to review and assessment prior to any offering or development.

18 V.S.A. § 9431(a).  CON review implements state health care policies with respect to health care delivery, cost, and quality through evaluation of the need, cost, and quality of new facilities and projects.  See In re Prof'l Nurses Serv. Application for Certificate of Need, 2006 VT 112, ¶ 12, 180 Vt. 479, 913 A.2d 381.

¶ 31.   I do not understand that Neighbors have a position on whether a mental health treatment center is needed in southern Vermont or whether the cost and quality of the center proposed is reasonable in light of the resources available in this state for mental health treatment. Neighbors oppose the location of the facility near their residences and are concerned with whether the facility will be operated with adequate security to prevent a patient from leaving the facility and interacting with Neighbors in inappropriate or even dangerous ways.  I do not deny the validity of Neighbors' concerns, or the need for a forum in which to have them considered, but I question whether the Green Mountain Care Board and the CON process is the proper place for these concerns to be addressed.  The CON process is focused on need, cost, and quality of health care expenditures and not on facility siting, and there is no indication that the Board has any expertise in the concerns raised by Neighbors.  Moreover, the concerns may be appropriate for consideration in facility licensing by the Department of Aging and Independent Living, see ante, ¶ 9 n.5, where Neighbors are also appearing, and in land use permitting in the town.  Duplicative regulation adds significant costs and delay to the participants in regulatory processes, as well as to the regulatory agencies, and delay risks inconsistent results.

¶ 32.   The Board is a limited resource in an important role.  It is important that we ensure that the resource is used carefully and appropriately.

¶ 33.   I am authorized to state Superior Judge Davenport (Ret.) joins this concurrence.

Associate Justice

14