*Nichols v. LaPlante*, No. 79-3-15 Oscv (Tomasi, J., September 3, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
ORLEANS UNIT
CIVIL DIVISION

| | |
|---|---|
| Scott Nichols, <br>   Plaintiff, <br><br>   v. <br><br> Dana LaPlante, *et al.* <br> Defendants. | Docket No. 79-3-15 Oscv |

## Decision On Defendants' Motion to Dismiss

Plaintiff Scott Nichols is an inmate in the custody and control of the Vermont Department of Corrections (the "Department"). At the time of the events in dispute here, he was incarcerated at Northern State Correctional Facility ("NSCF"). Since filing this complaint, Plaintiff has been released from prison and placed on conditional re-entry furlough in the community. This action was filed on March 6, 2015 seeking damages and injunctive relief for what the Court views as state and federal causes of action.

The named defendants were at, all relevant times, employees of the Department. Dana LaPlante was employed as a CO (Correctional Officer) II at NSCF; Richard Bilodeau was employed as a CFSS (Correctional Facility Shift Supervisor) at NSCF; David Turner served as the Director of Policy Development and Inmate Due Process for the Department;[1] and Andrew Pallito was the Commissioner of the Department. Plaintiff is suing all Defendants in their individual capacities for monetary relief and in their official capacities for injunctive relief.

Plaintiff alleges that Defendants are responsible for lost wages due to his incarceration for an additional four months stemming from a disciplinary conviction in September 2014. According to Plaintiff, he received a sanction of six days disciplinary segregation in violation of Department Directive 410.01. Plaintiff appealed the disciplinary conviction as specified by Directive 410.01 and alleges that his appeal was denied by the Commissioner. Plaintiff did not appeal the

---

[1] This position is also referred to as the "Corrections Executive."

disciplinary conviction or related punishments to this Court pursuant to Vt. R. Civ. P. 75.

As a collateral consequence of this conviction, Plaintiff claims that he had to restart programming, causing him to be placed on conditional re-entry furlough later than his minimum sentence date of January 1, 2015. As a result of the conviction, Plaintiff also claims to have suffered "severe and irreparable emotional, physical, spiritual, and tangible injury." Compl. ¶¶ 7-14.

## Conclusions of Law

*Standard of Review*

The Vermont Supreme Court disfavors Rule 12(b)(6) motions to dismiss. "Dismissal under Rule 12(b)(6) is proper only when it is beyond doubt that there exist no facts or circumstances consistent with the complaint that would entitle Plaintiff to relief." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (mem.) (quoting *Union Mut. Fire Ins. Co. v. Joerg*, 2003 VT 27, ¶ 4, 175 Vt. 196).

Nonetheless, a complaint must still meet a minimum standard of pleading. Vt. R. Civ. P. 8 requires that a complaint's allegations show "the pleader is entitled to relief." Further, a complaint must contain factual allegations supporting each element of the claims asserted. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1. On this motion, the Court "assume[s] that all factual allegations pleaded in the complaint are true, accept[s] as true all reasonable inferences that may be derived from plaintiff's pleadings, and assume[s] that all contravening assertions in defendant's pleadings are false." *Mahoney v. Tara, LLC*, 2011 VT 3, ¶ 7, 189 Vt. 557 (mem.) (internal quotation, brackets, and ellipses omitted).

*Analysis*

The Court first addresses Plaintiff's claims for injunctive relief. In Vermont, a case becomes moot when the issues presented are no longer "live" or "the parties lack a legally cognizable interest in the outcome." *Hunters, Anglers and Trappers Ass'n of Vt., Inc. v. Winooski Valley Park Dist.*, 2006 VT 82, ¶ 15, 181 Vt. 12, 21 (quotations omitted).

It is well settled that a transfer between facilities or release from prison moots any claims for injunctive relief from prison officials. *See, e.g., Hill v. Zenk*, 115 Fed. Appx. 97, 97 (2d Cir. 2004) ("Because [plaintiff] brought his action for relief against the warden of a facility in which he concedes he is no longer

incarcerated, his petition for relief is moot."); *Thompson v. Carter*, 284 F.3d 411, 415-16 (2d Cir. 2002); *Colman v. Goord*, 2 Fed. Appx. 170, 171 (2d Cir. 2001). The "mere possibility" that Plaintiff may be returned to prison for violating his furlough does not keep Plaintiff's injunctive relief claims "alive" such that the Court may adjudicate them. *Courts v. Coombe*, 95 Civ. 2350, 1996 WL 312357, at *2 (S.D.N.Y. June 11, 1996). As a result, Plaintiff's claims for equitable relief are dismissed.

Turning to Plaintiff's money damages claims, Plaintiff has alleged intentional infliction of emotional distress. In addition, the Court will treat Plaintiff's "lost wages" claim as asserting a malicious prosecution theory of recovery. *See* Compl. at 1 ("TORT CLAIM — Pursuant to Vermont Rules of Civil Procedure"). Though the State has litigated this case solely as a state-law tort action, the Court believes Plaintiff has also alleged violations of his constitutional rights under 42 U.S.C. § 1983.

Defendants maintain that Commissioner Pallito is protected by absolute immunity, while the other defendants are protected from suit in their individual capacities by the Vermont Tort Claims Act, or in the alternative, qualified immunity. Defendants further contend that, in any event, their conduct did not rise to the level of either a cognizable malicious prosecution or intentional infliction of emotional distress claim.

The Court will first discuss the state-law claims and whether Defendants are entitled to immunity on those claims, followed by the Section 1983 claims and possible applicability of federal official immunity.

1. State-Law Claims

a. Malicious Prosecution

In Vermont, a claim for malicious prosecution requires the plaintiff to establish that the defendant instituted the proceeding against him: (1) without probable cause; (2) with malice; and that (3) the proceeding terminated in the plaintiff's favor. *Anello v. Vinci*, 142 Vt. 583, 587 (1983). A proceeding is only "terminated" in a plaintiff's favor for purposes of a malicious prosecution claim if it can be determined that the defendant is not guilty of wrongdoing. *Lay v. Pettengill*, 2011 VT 127, ¶ 32, 191 Vt. 141, 160; ("[p]roceedings are 'terminated in favor of the accused' ... only when their final disposition is such as to indicate the innocence of the accused" (internal quotation omitted)); *Kent v. Katz*, 146 F. Supp. 2d 450, 460-61

(D. Vt. 2001) (even a termination by compromise is not sufficient to meet the requirements for a malicious prosecution case).

Here, Plaintiff does not allege that the underlying disciplinary conviction terminated in his favor. While Plaintiff's complaint establishes that he appealed the conviction, the appeal was resolved in favor of the Department, and Plaintiff failed to contest the decision in this Court pursuant to Vt. R. Civ. P. 75. Accordingly, to the extent that Plaintiff alleges malicious prosecution, that claim is dismissed.

b. Intentional Infliction of Emotional Distress (IIED)

In order to survive dismissal of an IIED claim, Plaintiff must allege: 1) conduct that is extreme and outrageous; 2) conduct that is intentional or reckless; and 3) conduct that causes severe emotional distress." *Baptie v. Bruno*, 2013 VT 117, ¶ 24, 195 Vt. 308, 318.

To satisfy the outrageousness element, the defendant's behavior must "surpass the bounds of decency that can be tolerated in a civilized society." *Fromson v. State*, 2004 VT 29, ¶ 15, 176 Vt. 395; *see also* Restatement (Second) of Torts § 46, cmt. d (1965). Plaintiff must also allege that defendant's actions caused him to suffer "distress so severe that no reasonable person could be expected to endure it." *Baldwin v. Upper Valley Services. Inc.*, 162 Vt. 51, 57 (1994).

It is well established that, "insult, indignities, and annoyances" do not amount to extreme and outrageous conduct. *Denton v. Chittenden Bank*, 163 Vt. 62, 66-67 (1994). Similarly, conduct that is tortious, or even criminal, may not rise to that level. Restatement (Second) of Torts, § 46 cmt. d (1965). This is especially the case in a prison, where most rights are measured "in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Even under this standard, however, Plaintiff's allegations are sufficient to survive a motion to dismiss. Plaintiff essentially alleges a conspiracy between correctional officers to subject him to additional jail time in retaliation for previous suits against the Department. Depending upon the extent of the bad acts, which could be uncovered in discovery, it could be enough to rise to the level of being "extreme and outrageous." Plaintiff has also alleged that Defendants' actions were intentional and have caused severe "emotional, physical, spiritual, and tangible" injuries in addition to reputational harm.

Under our system of "notice pleading," nothing more is required to make out a claim. *See* Vt. R. Civ. P. 8 (describing notice pleading); *Bock*, 2008 VT 81, ¶ 4, 184 Vt. at 576 ("[T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low.").

### c. Official Immunity Under State Law

Defendants argue that all of Plaintiff's claims are barred by various strains of official immunity. Because official immunity is, as the name suggests, an immunity from suit rather than a defense from liability, *see Murray v. White*, 155 Vt. 621, 626 (1991), it should be decided in the opening stages of a case. *Id.* at 626. That way, state officials need not bear the burden of discovery and litigation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

### i. Absolute Immunity

The doctrine of absolute immunity applies to "judges, legislators, and the State's highest executive officers when they are acting within the scope of their respective authorities." *LaShay v. Dep't of Soc. & Rehab. Servs.*, 160 Vt. 60, 64 (1993). It serves to protect these officials from all claims, even if they acted in bad faith or abused their discretion. *Id.* Commissioner Pallito is the highest-ranking official in the Vermont Department of Corrections, 28 V.S.A. § 102(a), and he is entitled to absolute immunity for actions taken within the "general authority" of his office. *Curran v. Marcille*, 152 Vt. 247, 249 (1989); *Levinsky v. Diamond*, 151 Vt. 178, 185 (1989), *overruled in part on other grounds by Muzzy v. State*, 155 Vt. 279 (1990).

Here, there is no allegation that Commissioner Pallito acted outside the scope of his statutory authority. S*ee* 28 V.S.A. § 102(c)(5). Plaintiff only alleges that the Commissioner denied his disciplinary appeal, in which he raised substantially the same issues as are alleged in this case. For that reason, the Commissioner is absolutely immune from liability for any harm caused to Plaintiff, and the state-law claims against him are dismissed.

### ii. The Vermont Tort Claims Act

The first question the Court must address with respect to the remaining Defendants is whether Plaintiff may maintain an individual-capacity suit against them at all. Ordinarily, claims against state employees for acts or omissions taken within the scope of employment must be brought exclusively against the state. 12

V.S.A. § 5602(a). An exception exists, however, permitting individual-capacity suits against state employees for "gross negligence or willful misconduct." *Id*. § 5602(b).

According to the allegations in the complaint, Defendant LaPlante violated Directive 410.01 by charging him with a major disciplinary violation instead of a minor disciplinary violation. Plaintiff alleges that CO LaPlante cited him with a major disciplinary violation because Plaintiff had previously named LaPlante's "fellow coworkers as defendants in lawsuits."[2] Compl. ¶ 8. Defendant Bilodeau oversaw Plaintiff's disciplinary hearing and imposed punishment thereafter. According to Plaintiff, CFSS Bilodeau spoke to Plaintiff off-the-record prior to the disciplinary hearing. CFSS Bilodeau allegedly advised Plaintiff that, "I'm going to smoke you," "I'm sick of your legal work," and "This hearing is karma." Compl. ¶ 9. Defendant Turner responded to Plaintiff's disciplinary appeal. Plaintiff alleges that Mr. Turner denied his appeal with "deliberate indifference" to his plight, and in violation of his constitutional and statutory rights. Compl. ¶ 12.

Taken in a light most favorable to Plaintiff, the actions of Defendants LaPlante and Bilodeau amounted to willful misconduct not covered by the exclusive remedy provisions of the Vermont Tort Claims Act. *See Long v. L'Esperance*, 166 Vt. 566, 575 (1997). Plaintiff has alleged that the constitutionally protected conduct of filing lawsuits was a substantial or motivating factor in Defendants' decision to charge and convict him with a major disciplinary violation. Such retaliatory conduct is not insulated by the discretion the Department enjoys in imposing inmate discipline or in making programming decisions. *In re Girouard*, 2014 VT 75, ¶ 13.

As to Defendant Turner, the Department argues that he merely denied Plaintiff's disciplinary appeal, an action that was well within his discretion under 28 V.S.A. § 854. While that may well be the case, Plaintiff alleges that he acted with deliberate indifference after being informed through the appeal of the purported constitutional violations of Defendants LaPlante and Bilodeau. Read in a light most favorable to Plaintiff, Mr. Turner's actions in denying appeal and failing to remedy the improper conduct of the other defendants may constitute willful misconduct. As a result, Plaintiff may assert an individual-capacity money damages claim against him.

---

[2] Plaintiff was charged with interfering with a staff member in the course of his or her official duties. Compl. ¶ 7.

### iii. Qualified Immunity

The Court next turns to the issue of whether Defendants LaPlante, Bilodeau and Turner are protected by qualified immunity. Qualified immunity protects government officials from suit, "who are (1) acting during the course of their employment and acting, or reasonably believing they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial, acts." *Murray*, 155 Vt. at 627. The analysis must focus on "the objective reasonableness of the official's conduct in relation to settled, clearly-established law." *Hoffer v. Ancel*, 2004 VT 38, ¶ 12, 176 Vt. 630 (mem.) (quotation omitted).

The Court first notes that the Department's Directives do not create due process interests that would not exist otherwise. *King v. Gorczyk*, 2003 VT 34, ¶ 25, 175 Vt. 220, 234-35. They are more akin to agency manuals, providing Department employees with guidance on how to carry out their statutory duties. *Id*. ¶ 22, 175 Vt. at 234 (citing *Wanzer v. Dist. of Columbia*, 580 A.2d 127, 133 (D.C. Ct. App. 1990)). Furthermore, as noted by Defendants, inmate discipline is a discretionary function of the Department. *See* 28 V.S.A. § 102(c)(5).

But here, Plaintiff alleges that Defendants abused their discretion to impose discipline on him in retaliation for undertaking litigation against the Department or acted with indifference to that claim. Our Supreme Court recently held that similar retaliatory conduct on the part of the Department, if established,[3] would be unconstitutional. *In re Girouard*, 2014 VT 75, ¶ 13. The Court concludes that, even assuming that Defendants' actions in this case were discretionary and within the scope of their authority, they are not entitled to qualified immunity. If true, Plaintiff's allegations establish that Defendants violated clearly established law.

### 2. Section 1983 Claims

With regard to Plaintiffs claim under Section 1983, he alleges that Defendants engaged in retaliation for constitutionally protected conduct. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). As noted above, the thrust of

---

[3] In order to establish a *prima facie* case for unconstitutional retaliation, a plaintiff must demonstrate that "he engaged in constitutionally protected conduct and that the protected conduct was a 'substantial or motivating factor' in DOC's decision to require additional programming...." *In re Girouard*, 2014 VT 75, ¶ 12 (citing *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)).

the allegations are that Defendants "overcharged" Plaintiff in apparent retaliation for lawsuits Plaintiff filed against the Department. Such allegations are sufficient to state a claim against the Correctional Officer Defendants.

Section 1983 does not hold supervisors vicariously liable for the conduct of the employees that they oversee, however. *Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997). Instead, a plaintiff must establish that the supervisor had some "personal involvement" in the alleged constitutional deprivations. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Among other things, supervisory personnel may be considered "personally involved" if they failed to remedy the wrong after being informed of the violation through a report or an appeal. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).

With respect to the supervisory personnel named as Defendants here, Commissioner Pallito and Mr. Turner, Plaintiff has alleged that he submitted grievances explaining his claims and that both of those individuals denied his grievances "with deliberate indifference." Compl. ¶¶ 12-13. Accordingly, Defendant has stated a claim against the supervisory officials.

Defendants also assert qualified immunity under federal law. It is well established that the test for qualified immunity under state law is functionally similar to the federal test established under *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *Murray*, 155 Vt. at 630. For that reason, there is no call to analyze whether Defendants LaPlante, Bilodeau, and Turner are entitled to qualified immunity under federal law. The analysis concerning state-law qualified immunity shows that they are not. With regard to Defendant Pallito, he stands in the same position as Defendant Turner with regard to the issue of qualified immunity. Defendant Pallito is not entitled to qualified immunity at this point for the same reasons described above concerning Defendant Turner. If Plaintiff's allegations are true, the failure to remedy the unconstitutional activity alleged in the Complaint would violate clearly established law.[4]

---

[4] The State has not argued that Defendants Pallito and Turner are entitled to absolute immunity because their conduct in the prison disciplinary system is "quasi-judicial" in nature. Similar prison officials typically have been afforded only qualified immunity by the courts. *See Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985); *Young v. Selsky*, 41 F.3d 47, 51-54 (2d Cir. 1994).

## Order

Wherefore, Defendants' Motion to Dismiss is *granted in part* and *denied in part*. All state-law tort claims against Commissioner Pallito are *dismissed*. Plaintiff's claim for malicious prosecution is *dismissed*. The motion to dismiss is otherwise *denied*

The qualified immunity issues raised in the motion to dismiss are denied without prejudice. If supported by the record, they may be renewed at the summary judgment stage and at trial.

Dated at Newport, Vermont this ____ day of August, 2015.


_____
Timothy B. Tomasi
Superior Court Judge